# STATE OF CONNECTICUT *v.* LESTER SMITH
## (3842)
## (3843)

BORDEN, SPALLONE and BIELUCH, Js.

Argued February 3—decision released May 5, 1987

*Barbara Goren,* special public defender, for the appellant (defendant).

*Christopher Malany,* deputy assistant state's attorney, with whom, on the brief, was *Roland Fasano,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from his convictions, after a jury trial, on two informations. The first information charged three counts of robbery in the first degree arising out of an incident at an AM-PM Mini Mart in New Haven, and the second information charged a single count of robbery in the first degree arising out of an incident at a Dairy Mart in West Haven, all in violation of General Statutes § 53a-134 (a) (4). The defendant claims that the trial court erred (1) in granting the state's motion to consolidate the two informations, (2) in unduly restricting defense counsel's voir dire examination of potential jurors, (3) in unfairly charging on the credibility to be accorded the defendant's testimony, and (4) in erroneously charging on circumstantial evidence. We find no reversible error.

The jury could reasonably have found the following facts. With respect to the first information, on September 3, 1983, at about 11:35 p.m., the defendant and another person entered an AM-PM Mini Mart in New Haven, drew their guns and announced, "This is a hold-up. No one move." The defendant walked behind the counter and ordered a store employee, Mitchell Nixon, to empty the contents of the cash register into a paper bag. James Harder, a customer, was in the store at the time of the robbery. The defendant's companion took Harder's wallet, which contained about $60 and various credit cards. While the robbery was in progress, Garrett Johnson entered the store, and the defendant's accomplice took his wallet which also contained cash.

The descriptions given by these three witnesses tended to establish that the person who went behind the counter was a black male, about 6 feet 2 or 3 inches tall, and armed with a revolver. He wore a clear shower cap over his hair and surgical gloves on his hands and, during the course of the robbery, he put on sunglasses. The second robber was also a black male, about six feet tall, with a moustache and goatee, also wearing surgical gloves and sunglasses. Additionally, he wore a wide-brimmed hat and carried a semi-automatic pistol. Both Nixon and Harder identified the defendant at trial as the person who robbed the AM-PM Mini Mart. They did not, however, identify him from any of the photo arrays shown to them.

With respect to the second information, five hours after the AM-PM Mini Mart robbery, a Dairy Mart convenience store in West Haven was robbed. Joseph Nardini, the employee on duty at the time, testified that two men came into his store. The taller of the robbers, armed with a revolver, came behind the counter and ordered Nardini to empty the contents of the register, about $230, into a paper bag. Don Ranslow, a customer, was also in the store at the time of the robbery. He was forced by the defendant's companion to lie spread-eagled on the floor. He did not, however, have any property taken from him. Nardini and Ranslow testified that the defendant and his accomplice were both black and were wearing sunglasses and shower caps. Nardini further testified that the person who came around the counter was wearing a surgical glove on his right hand. Nardini identified the defendant both at trial and from a photograph array.

After the robbery was complete and the two men had fled the Dairy Mart, Nardini called the West Haven police. In response, Edward Anderson, a patrolman

operating his car in the area, observed a blue Cadillac occupied by two black men speeding from the scene of the crime. He pursued the car, and after a high speed chase it came to a stop in a parking lot. The two occupants left the car and ran off. A check revealed that the blue Cadillac was registered to the defendant. A subsequent search of the car by Officer William Ciccosanti of the West Haven police department revealed a loaded .38 caliber Colt revolver, a shower cap, two pairs of surgical gloves, two pairs of sunglasses, Garrett Johnson's wallet with identification cards, James Harder's empty wallet, and the defendant's wallet containing James Harder's credit cards.

The defendant presented an alibi defense. He called as witnesses his half brother and his nephew. Their testimony tended to show that the defendant had been in their company at various locations in and around New Haven until approximately 11 p.m. The defendant then drove his half brother home and returned to a club in New Haven at which he had been earlier in the evening. He stayed there until it closed around 3:30 a.m. The defendant testified that he thereafter drove to West Haven to visit a female friend. As he was leaving the friend's apartment, he was accosted by two men in the lot where he had parked his car. They forced him at gunpoint into the back seat of his car and threatened him in connection with a woman with whom he had spoken the previous day. They also told him "you already committed one robbery and you're going with us to commit another." The defendant testified that the two men were wearing shower caps and sunglasses. They drove off with the defendant in his car, and when it slowed down at a corner the defendant jumped out. During his escape, the defendant testified, one of the armed men grabbed his jacket which came off. In the jacket was the defendant's wallet and identification.

## I

The defendant claims first that the trial court erred in granting the state's motion to consolidate the information charging the three robberies at the AM-PM Mini Mart with the information charging the single robbery at the Dairy Mart. We disagree.

Over the defendant's objection, the trial court granted the state's motion to consolidate. The defendant claims that as a result, he suffered substantial prejudice in two ways. First, he claims that the evidence of one robbery would not have been admissible during the separate trial on the other robbery. He acknowledges that the two robberies were similar but claims that they were not sufficiently unique to have been mutually admissible in separate trials as "signature" crimes. Therefore, he argues, trying the cases together when they otherwise would not have been mutually admissible created the possibility that the jury cumulated evidence and cured any weakness in either case in order to convict the defendant on both. The defendant claims this was particularly likely to occur in these cases because the identification evidence in the Dairy Mart robbery was stronger than in the AM-PM Mini Mart robbery, creating the likelihood that the jury cumulated the evidence to reach their guilty verdicts. Second, the defendant claims he suffered substantial prejudice by the consolidation of the charges because his decision to testify was impermissibly interfered with. He claims that he might not have taken the witness stand with respect to the AM-PM Mini Mart robbery because the identifications were weak, if not nonexistent, and because his alibi witnesses accounted for his whereabouts during the time the robbery was allegedly committed. Because the cases were tried together, however, he claims he was pressured to take

the witness stand to explain the second crime, especially since his alibi defense did not cover that time period.

The trial court is empowered to consolidate or sever trials. See General Statutes § 54-57; Practice Book §§ 828, 829. Whether a trial court orders a severance is a question within the sound discretion of the trial court, and that discretion must not be disturbed unless it has been manifestly abused. *State* v. *Schroff,* 198 Conn. 405, 408–409, 503 A.2d 167 (1986). Such discretion to order separate trials should be exercised only when a joint trial will be " 'substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less than advantageous to the defendant.' " (Emphasis added.) Id. In demonstrating substantial prejudice from the denial of a severance, an accused bears a heavy burden. *State* v. *King,* 187 Conn. 292, 302, 445 A.2d 901 (1982).

With respect to the defendant's first claim, we recognize that "[t]he most obvious example of possible prejudice [from a joint trial] is that, when the crimes near in time, place and circumstance, are so similar . . . there is danger that the jury will use the evidence of one crime to convict the defendant of the other crime. See *Drew* v. *United States,* 331 F.2d 85, 89 (D. C. Cir. [1964]); 1 Wigmore, Evidence (3d Ed.) § 194." *State* v. *Oliver,* 161 Conn. 348, 288 A.2d 81 (1971). The same rationale lies behind the rule that evidence of other crimes is inadmissible except in certain situations. This case, however, is one of those situations where, had the cases been tried separately, evidence of each robbery would have been mutually admissible.

Evidence of a criminal defendant's prior unconnected crime " ' "[may be] admissible . . . when it is particularly probative in showing such things as . . . identity . . . ." ' " *State* v. *Gilnite,* 4 Conn. App. 676, 680,

496 A.2d 525 (1984)." *State* v. *Murrell,* 7 Conn. App. 75, 80, 507 A.2d 1033 (1986). The principal issue in dispute at the defendant's trial was the identity of the person or persons who robbed the two convenience stores. In order to introduce evidence of other crimes or misconduct on the issue of identity, the methods used to perpetrate the crime must be " ' "sufficiently unique to warrant a reasonable inference that the person who performed one misdeed also did the other." ' " Id., 81, quoting *State* v. *Ibraimov,* 187 Conn. 348, 354, 446 A.2d 382 (1982).

The two crimes in this case pass the test of sufficient uniqueness. They shared significant similarities, including the fact that they were robberies perpetrated on convenience stores, in adjacent towns, within five hours of each other, by two armed black males one or both of whom were distinctively garbed in a shower cap, sunglasses and surgical gloves.

Our conclusion that the crimes would have been mutually admissible in separate trials undermines the defendant's first claim of prejudice. We note further that, under the facts of this case, even if the two robberies were not signature crimes, evidence of the Dairy Mart robbery probably would have been admissible at the trial of the AM-PM Mini Mart robbery. The defendant's arrest for the AM-PM Mini Mart robbery occurred as a direct result of the investigation of the Dairy Mart robbery. If a trial were to be held on the AM-PM Mini Mart charges alone, much of the evidence relating to the Dairy Mart charge might well have been admissible to explain the basis of the officer's search of the defendant's vehicle and the discovery of the fruits of the AM-PM Mini Mart robbery. "Economy and expedition of judicial resources are not achieved when the same facts must be proved to two different juries." *State* v. *Schroff,* supra, 409; see *State* v. *Torrence,* 1 Conn. App. 697, 708, 476 A.2d 598 (1984), aff'd, 196

Conn. 430, 493 A.2d 865 (1985). Considerations of economy, therefore, are properly taken into account by the trial court in deciding whether to consolidate charges. This is especially so where, as here, the evidence on each robbery was straightforward and there was no reasonable ground for thinking that the jury could not keep separate the relevant evidence for each charge. *State* v. *King,* supra, 301.

The defendant also fails to convince us that the consolidation of the charges in the two cases had a negative impact on his decision on whether to testify. Our Supreme Court has recently stated that " 'no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in judicial administration" against the defendant's interest in having a free choice with respect to testifying.' *Baker* v. *United States,* [401 F.2d 958, 977 (D.C. Cir. 1968), cert. denied, 400 U.S. 965, 91 S. Ct. 367, 27 L. Ed. 2d 384 (1970)] . . . ." *State* v. *Schroff,* supra, 409.

The defendant argued, at the hearing on the state's motion to consolidate, that he might not wish to testify with respect to the AM-PM Mini Mart robbery because it was a weak case, and because up to that point there had been no identification of him. The defendant was inclined, however, to take the witness stand to "give his stories for the [Dairy Mart] crime." Since the cases were tried together, he claims that he was forced to make an election on whether to testify.

The defendant has seriously underestimated the strength of the state's case with respect to the AM-PM Mini Mart robbery, thus undermining the authenticity of his articulated need to refrain from testifying. See *State* v. *Schroff,* supra. Two witnesses, Nixon and Harder, identified the defendant in court as the perpetrator of the crime. Additionally, the robbery was on video film, and numerous items of evidence connected with it were recovered from the defendant's car following the Dairy Mart robbery. We are not satisfied that the defendant's claim of prejudice is genuine. *State* v. *Schroff,* supra. If a trial court were required automatically to grant a defendant's motion whenever he articulated a claim of prejudice, without the discretion to weigh the likelihood of the prejudice coming to fruition, it would be the defendant and not the trial court who would control the determination of severance motions. "A worst possible scenario can always be imagined." *State* v. *Smith,* 201 Conn. 659, 670, 519 A.2d 26 (1986); see *State* v. *King,* supra, 308; *State* v. *Edwards,* 10 Conn. App. 503, 507, 524 A.2d 648 (1987). Under the facts of this case, the defendant has failed to demonstrate a need to testify in one case and a strong need to refrain from testifying in the other.

## II

The defendant next claims that the trial court erred in restricting the scope of the voir dire examination by refusing to permit defense counsel the opportunity to inquire of prospective jurors (1) whether they would be inclined to attach greater weight to the testimony of a law enforcement officer, and (2) whether the fact that the defendant was arrested would tend to constitute evidence of his guilt in their view.[1] He claims that

[1] The defendant also claims error in the trial court's refusal to allow him to question jurors on their willingness to exclude considerations of sympathy and to follow the court's instructions that guilt be established by proof beyond a reasonable doubt. The flaw with the defendant's attempt to raise

those restrictions constitute reversible error since they violated his statutory and constitutional right to a meaningful voir dire examination and an impartial jury.[2] We find no reversible error.

During the voir dire of the second venireperson, the defendant asked: "Obviously the defendant's been arrested. The fact of his arrest in your mind. Is that any evidence of guilt?" and, "It is true that police officers will testify in this case. Would you take—put more weight on a police officers testimony, [than] that of another witness?" The trial court informed counsel that

this claim on appeal is that he never posed these questions to potential jurors during voir dire. Rather, it was the state's attorney who pursued this line of questioning and who was foreclosed from continuing by the court. The defendant has attempted to preserve a claim of error in the trial court based on an adverse ruling for the opposing party. We, therefore, decline to review this claim.

The defendant has also claimed error in the restriction of the examination of a prospective juror. The prospective juror stated that he had strong feelings about the criminal justice system. When the defendant attempted to inquire into the nature of these feelings, the trial judge cut short the line of questioning. The defendant apparently did not perceive any problem with the juror's ability to participate in the case since he did not exercise a peremptory challenge, nor did he object to the trial court's restriction. We therefore decline to review this claim.

[2] We reject the state's argument that the defendant has not provided this court with a sufficient record, as required by Practice Book § 4061 (formerly § 3060D), to review his claim of improper restriction of voir dire examination on the ground that he only requested transcript which supported his claims. The state relies on State v. Edwards, 201 Conn. 125, 513 A.2d 669 (1986), for its argument. This reliance is misplaced. As the defendant points out, the Edwards court reviewed a similar claim on a record of greater inadequacy. In Edwards, the defendant had requested that only the colloquy between the court and counsel on certain questions be transcribed. In contrast, in this case, a full day of voir dire was transcribed, including not only the colloquy concerning restrictions imposed by the court but the entire voir dire of fourteen prospective jurors, five of whom sat on the defendant's jury. In Edwards, the inadequacy of the record stemmed from the inability to know whether the subject matter of the specific questions objected to were raised by other questions of a similar nature. State v. Edwards, supra, 160. That problem did not exist in this case because the individual voir dires were transcribed in their entirety.

it would not allow either line of questioning, and defense counsel duly objected. After the voir dire of the potential juror was completed, defense counsel sought a further ruling on the permissibility of asking the disputed questions. The trial court stated that they were outside the scope of proper voir dire and were in the nature of a "law quiz to the jury." The defendant established that he had properly preserved his claim for appeal and did not thereafter continue to pose the disputed questions. His claims are therefore properly before us.

" 'The purpose of the voir dire examination is twofold. "First, it provides information upon which the presiding judge may decide which of the prospective jurors, if any, he should excuse for cause. Secondly, it informs counsel as to matters which may influence them in the exercise of their right to peremptory challenges." *Duffy* v. *Carroll*, [137 Conn. 51, 56, 75 A.2d 33 (1950)].' *State* v. *Anthony*, [172 Conn. 172, 174–75, 374 A.2d 156 (1976)]; see *State* v. *Haskins*, 188 Conn. 432, 446, 450 A.2d 828 (1982). ' "The right to a voir dire examination of each prospective juror in a criminal action is provided by § 54-82f of the General Statutes. The court has the duty to analyze individual questioning under this section and limit examination to questions relating to (1) juror's qualifications, (2) interest, if any, in the subject matter of the action, and, (3) relations with the parties thereto. This right was established as a constitutional one in 1972 by inclusion in article IV of the amendments to the state constitution of the provision that '[t]he right to question each juror individually by counsel shall be inviolate.' *State* v. *Haskins*, [supra, 446]; *State* v. *Anthony*, [supra, 174]." *State* v. *Hill*, 196 Conn. 667, 671, 495 A.2d 699 (1985).' *State* v. *Rogers*, 197 Conn. 314, 317–18, 497 A.2d 387 (1985); *State* v. *Burns*, 173 Conn. 317, 321,

377 A.2d 1082 (1977)." *State* v. *Dahlgren,* 200 Conn. 586, 600–601, 512 A.2d 906 (1986).

"The court has wide discretion in conducting the voir dire; see, e.g., *State* v. *Rogers,* supra, 318; *State* v. *Haskins,* supra, 447; *State* v. *Clark,* 164 Conn. 224, 226, 319 A.2d 398 (1973); and the exercise of that discretion will not constitute reversible error unless it has clearly been abused or *harmful prejudice* appears to have resulted. *State* v. *Hill,* supra, 672; see *Turner* v. *Murray,* 476 U.S. 28, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986); *Rosales-Lopez* v. *United States,* 451 U.S. 182, 101 S. Ct. 1629, 68 L. Ed. 2d 22 (1981)." (Emphasis added.) *State* v. *Dahlgren,* supra, 601.

We turn first to the defendant's claim that he should have been permitted to ask potential jurors whether they believed that the fact of his arrest was evidence of guilt. The defendant has raised this claim of error in his brief but has failed to present this issue with any modicum of compliance with the rules of practice. See Practice Book § 4065 (formerly § 3060F). The defendant has failed to research the law or to formulate any legal argument with respect to this particular aspect of his claim that voir dire was improperly restricted. Nor has he provided us with any citation to legal authority. We are therefore precluded from granting meaningful appellate review.[3] *Gill* v. *Petrazzuoli Bros., Inc.,* 10 Conn. App. 22, 29, 521 A.2d 212 (1987).

---

[3] We note that our research has failed to disclose any Connecticut authority which mandates that the defendant be permitted to ask potential jurors whether they believed that the fact that the defendant was arrested was evidence of guilt. We recognize that such a question was apparently asked during voir dire in *State* v. *Marra,* 195 Conn. 421, 443, 489 A.2d 350 (1985). The issue on appeal in *Marra,* however, was whether a juror, who replied affirmatively that he would infer guilt from the fact of an arrest, should have been excused for cause. The propriety of the question was not before the court.

We find error, however, in the trial court's refusal to permit defense counsel to inquire of prospective jurors whether they would attach greater credence to the testimony of a police officer.[4] Our Supreme Court has recently held, on two occasions, that it was reversible error to preclude defense counsel from inquiring into the possible bias a juror may have with respect to police testimony. See *State* v. *Rogers,* supra; *State* v. *Hill,* supra. The court commented that " '[w]hen important testimony is anticipated from certain witnesses whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination should be permitted. . . .' *State* v. *Hill,* supra, 672–73." (Citations omitted.) *State* v. *Rogers,* supra, 318–19.

Our finding of error, in conformity with *State* v. *Rogers,* supra, and *State* v. *Hill,* supra, does not end the inquiry. We must determine whether the error is reversible, which requires a conclusion that harmful prejudice resulted to the defendant. *State* v. *Hill,* supra, 671–72. In both *State* v. *Hill,* supra, 672, and *State* v. *Rogers,* supra, 318, the Supreme Court found harmful prejudice because the testimony of the police officer was crucial to the state's case. In *State* v. *Hill,* supra, the defendant had been charged with arson murder. In that case, almost half of the witnesses called by the state were police officers or fire officials. Their testimony was crucial in two respects. First, it tended to corroborate the testimony of the *sole* eyewitness whose credibility had been seriously undermined because she had made conflicting statements prior to trial. Second, police officers testified that the defendant smelled strongly of gasoline, which was circumstantial evidence of his involvement in the arson. Id., 672.

---

[4] The state conceded in its brief that, if the claim is reviewable, the trial court erred in imposing this restriction on the voir dire examination.

In *State* v. *Rogers,* supra, the defendant was charged with robbery. The defendant presented an alibi defense, claiming to have been at home during the time of the robbery. A police officer testified, however, that the defendant had made incriminating statements to him, namely that he " 'got jacked up on a robbery charge' and had witnessed a struggle but had not participated in any robbery." Id., 318. This directly contradicted the defendant's alibi. Since one witness had affirmatively testified that the defendant was *not* the robber, the credibility of the police officer's testimony was crucial. In the present case, the police officers' testimony was not crucial. Therefore, the issue of their credibility did not take on the same significance as in *State* v. *Rogers,* supra, and *State* v. *Hill,* supra.

Four police officers testified at the defendant's trial. The defendant claims significance in the testimony of two of the officers as it bears on the robbery of the AM-PM Mini Mart. He argues that his counsel's defense strategy was to cast doubt on the validity of the in-court identifications of the defendant by Harder and Nixon. In this regard, the defense counsel sought to elicit from Sergeant Binkowski, the officer who supervised the photo arrays, a statement that the victims had been shown the defendant's photograph but failed to identify him. Binkowski stated that to the best of his knowledge no photograph of the defendant had been viewed by Harder and Nixon. In closing argument, defense counsel argued that the victims of the AM-PM Mini Mart robbery must have been shown a photograph of the defendant, and since they failed to identify him their in-court identifications should be considered suspect. As part of this argument, defense counsel suggested that Binkowski may have lied in his testimony. The defendant also claims that the testimony of Detective Ciccosanti, an officer of the West Haven police department, was crucial. Ciccosanti processed the evidence

discovered in the defendant's car and testified that he found Harder's credit cards in the defendant's wallet. This tended to undermine the defendant's alibi evidence, which placed him with his half brother and cousin during the AM-PM Mini Mart robbery and which explained the presence of the victim's credit cards in the defendant's car. Upon questioning by defense counsel, Ciccosanti denied having placed the credit cards in the wallet himself but defense counsel, nonetheless, argued to the jury that he had done so.

Whether a police officer's testimony is so crucial as to lead to reversible error, when a defendant is not permitted to inquire into potential jurors' views on such testimony, depends on the facts of the case and the issues in dispute. The issue in dispute in this case was identity. The testimony of the officers on this issue was not crucial. There was significant additional evidence, including the in-court identification of the defendant by two witnesses, a video film of the robbery which was viewed by the jurors, the discovery of the defendant's car five hours after the first robbery containing the wallets of two of the victims of that robbery, and the perpetration of a nearly identical crime less than five hours later in which the defendant was identified as the robber. We hold, therefore, that the police testimony in this case was not crucial to the state's case. While the trial court should have allowed defense counsel to inquire into potential jurors' views on police officer testimony, the failure to do so, under the facts of this case, did not result in harmful prejudice.

### III

The defendant next claims that the trial court erred in its instructions to the jury on the credibility of the defendant's testimony in violation of his statutory and constitutional right to an impartial jury. We disagree.

The trial court instructed the jury, in relevant part, as follows: "When the defendant elects to testify on his own behalf, he assumes the risk that the jury cannot only disbelieve his story, but might also wonder quite properly *why his explanation of his conduct was so improbable,* if that is your finding." (Emphasis added.)[5] The defendant duly excepted to this comment, claiming that the trial court unfairly singled out his testimony to comment on its improbability. He claims that there were portions of the state's case that were equally appropriate vehicles for the instruction.

" '[T]he trial court in a criminal case may, in its discretion, make *fair comment* on the evidence and *particularly on the credibility of the witnesses.' State* v. *Cari,* 163 Conn. 174, 182, 303 A.2d 7 (1972), quoted in *State* v. *Bennett,* 172 Conn. 324, 329, 374 A.2d 247 (1977)." (Emphasis added.) *State* v. *Stepney,* 191 Conn. 233, 248, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). " 'Such comments, however, must not advise the jury on how to decide the case; *State* v. *Storlazzi,* 191 Conn.

---

[5] The trial judge charged as follows:

"Now in this case, the accused elected to take the witness stand and he has a perfect right to do so. In weighing the testimony that he has given, you should apply the same principles by which the testimony of any other witnesses are tested. And that necessarily involves the consideration of his interest in the case and the importance to him of the outcome of the trial. Although the state clearly has the burden of proof to establish guilt beyond a reasonable doubt, and although the defendant clearly has the right clearly not to testify, if the defendant does testify, the jury may properly base its finding of guilt in part, on the defendant's testimony and their disbelief in its truth. If that is your judgment. When the defendant elects to testify on his own behalf, he assumes the risk that the jury cannot only disbelieve his story, but might also wonder quite properly why his explanation of his conduct was so improbable, if that is your finding. The accused stands before you like any other witness. He's entitled to the same considerations and must have his testimony measured in the same way as that of any other witness."

453, 465, 464 A.2d 829 (1983); but may merely give the jury a fair presentation of the issues. See *State* v. *Schoenbneelt,* [171 Conn. 119, 124, 368 A.2d 117 (1976)].' *State* v. *Taylor,* 196 Conn. 225, 232, 492 A.2d 155 (1985). 'The ultimate test of the charge is whether, read in its entirety, it fairly presents the case to the jury so that no injustice is done.' *State* v. *Storlazzi,* supra, 466; *State* v. *Mullings,* 166 Conn. 268, 274, 348 A.2d 645 (1974). Individual comments are not to be judged in isolation from the charge as a whole; *State* v. *Moss,* 189 Conn. 364, 367, 456 A.2d 274 (1983) . . . .'' *State* v. *Collette,* 199 Conn. 308, 316, 507 A.2d 99 (1986).

Viewing the comments in the context of the entire instruction, we conclude that the charge fairly presented the case to the jury. The jury was repeatedly instructed that the same principles for determining credibility apply to all witnesses, whether the witness was the defendant, a police officer or an eyewitness. In fact, immediately prior to the claimed offensive language, and immediately after it, the jury was instructed that the defendant's testimony was to be treated in the same manner as any other witness' testimony. See footnote 5, supra. This, coupled with the fact the trial court did not make any reference to the details of the defendant's testimony, precluded any unfair effect flowing from the instruction. Furthermore, a differently worded but functionally equivalent instruction had already been given during a general charge on witness credibility. The trial court had instructed that "[a]nother question for you to have in mind as regards each witness is the question as to whether the story the witness has told you is *plausible.* Does it ring true or are their inconsistencies." (Emphasis added.) A review of the entire charge leads us to the conclusion that the jury could not have misconstrued the instruction to apply to the defendant's testimony only. We hold

that the court's instructions, read as a whole, were fair and balanced, and the challenged credibility instruction was well within the court's discretion. See *State* v. *Stepney*, supra, 248–49.[6]

## IV

The defendant's final claim is that the trial court erred when it gave a "more probable than not" instruction on circumstantial evidence.[7] Because he failed to object to the instruction, the defendant presents his claim under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). This court has recently granted *Evans* review to similar claims; see *State* v. *Dullivan,* 10 Conn. App. 474, 477, 523 A.2d 1353 (1987); *State* v. *Perez,* 10 Conn. App. 279, 283, 523 A.2d 508 (1987); and will do so yet again.

The defendant admits that the principal issue in dispute was identity. He claims, however, that we should apply close scrutiny in conformity with the *Rodgers-Whelan* line of cases,[8] because in this case identity was

---

[6] The defendant also claims that the trial court's comments were erroneous because they conveyed the court's personal view of the defendant's testimony as improbable. The defendant did not raise this claim in the trial court. A review of the record reveals that his sole objection to that portion of the credibility instruction was that the defendant's testimony should not have been singled out to the exclusion of testimony of the state's witnesses. We therefore decline to review this claim.

[7] The trial court charged: "You may apply the rule of circumstantial evidence. This rule involves the offering of evidence from which you are asked to infer the existence of another fact or set of facts. Such an inference may be made provided two elements in the application of this rule are satisfied. First, that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt. Secondly, that the inference that you're asked to draw is not only logical and reasonable but is strong enough so that you can find that it is more probable than not that the fact to be inferred is true."

[8] For the purposes of this opinion, the *Rodgers-Whelan* line of cases are those in which the principle issue in dispute was intent and the trial court's instructions were subject to close scrutiny. *State* v. *Whelan,* 200 Conn. 743, 755, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L.Ed. 2d 598 (1986); *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985).

proven entirely by circumstantial evidence.[9] We decline, however, to apply the *Rodgers-Whelan* analysis in this case because identity was *not* proven entirely or even primarily by circumstantial evidence. On the contrary, there was substantial direct evidence implicating the defendant as the perpetrator of the New Haven robbery, including the in-court identification of the defendant by two of the victims and the video tape of the robbery as it was in progress. Where the principal factual issue is identity and, as under the facts of this case, it is not primarily dependent upon circumstantial evidence for its proof, "the trial court's instructions may be read as a whole to determine whether it is reasonably possible that the jury was misled by an erroneous explanation regarding the use of circumstantial evidence. See *State* v. *Reddick,* [197 Conn. 115, 133, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986)]." *State* v. *Farrar,* 7 Conn. App. 149, 155–56, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).

Reading the trial court's instruction as a whole, we conclude that it is not reasonably possible that the jury was misled to believe that they were to apply any other standard than that of "proof beyond a reasonable doubt" in determining the defendant's guilt. See *State* v. *Miller,* 202 Conn. 463, 491, 522 A.2d 249 (1987). The jury was instructed on numerous occasions that they could not find the defendant guilty except upon proof beyond a reasonable doubt as to each element of the crime charged. Furthermore, the trial court specifically charged the jury that the state's evidence, "from whatever source or *circumstantially inferred,"* must establish each element of the crime on proof beyond a

[9] This claim of error appears to be entirely directed at the AM-PM Mini Mart robbery convictions.

reasonable doubt." (Emphasis added.)[10] They were also specifically instructed that identity is an element of the crimes charged, for which proof beyond a reasonable doubt was required.

There is no error.

In this opinion the other judges concurred.

---

[10] The trial court charged: "If you find that the state has not by the evidence offered, or that the evidence before you from whatever source or *circumstantially inferred* does not establish that each of the elements of the crime of robbery have been proven beyond a reasonable doubt, then you must find the defendant not guilty as charged." (Emphasis added.)