STATE OF CONNECTICUT *v.* MARIA MALINES
(4594)

BORDEN, SPALLONE and BIELUCH, Js.

Argued February 6—decision released July 7, 1987

*Richard Emanuel,* with whom was *John R. Gulash, Jr.,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney and *Frank S. Maco,* assistant state's attorney, for the appellee (state).

BIELUCH, J. The defendant appeals from the judgment of conviction rendered in accordance with the jury's verdict of guilty to the crime of manslaughter

in the second degree, a violation of General Statutes § 53a-56.[1] She claims as erroneous the trial court's instructions on circumstantial evidence. See *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 944, 107 S. Ct. 597, 93 L. Ed. 2d 1598 (1986). She also claims that the evidence presented at trial was insufficient to establish her guilt beyond a reasonable doubt. Finally, she claims that the trial court erred in instructing on the effect of the defendant's failure to testify. We find error.

The jury could reasonably have found the following facts: The defendant resided in Bridgeport with her husband, Julio Malines, and her two daughters. On June 3, 1984, at approximately 7 p.m., the defendant was in the kitchen arguing with her daughter Rosita when Julio intervened on behalf of Rosita. The dispute then heightened in intensity, whereupon the defendant left the kitchen. Julio also left the kitchen and subsequently went out into the backyard.

While Julio was in the backyard, the defendant returned to the kitchen carrying a loaded gun and told Rosita to leave the house. Rosita immediately ran into the yard and hid behind a pool. The defendant followed her into the yard, waving the gun, while declaring that she had three other guns hidden and that, if the gun she was carrying was taken from her, she had three bullets for Julio and three bullets for Rosita. Rosita approached the defendant and asked her to give her the gun, but the defendant refused and told Rosita to

---

[1] "[General Statutes] Sec. 53a-56. MANSLAUGHTER IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person; or (2) he intentionally causes or aids another person, other than by force, duress or deception, to commit suicide."

We note that the judgment file erroneously identified manslaughter in the second degree as a violation of General Statutes § 53a-55 (a) (3) (manslaughter in the first degree).

return to the house. Rosita obeyed the defendant and called the police from a bedroom.

The defendant and Julio were still arguing in the backyard when Rosita leaned out of a window and yelled to Julio that she had called the police. The defendant responded by pointing the gun at Rosita, who quickly retreated from the window.

At this point, Nathan Santiago, a neighbor who had heard the disturbance, came over to the Malines' property. Santiago had served for over seven years as a policeman with the Bridgeport housing authority and had training and experience in handling domestic disputes. He encountered the defendant in the kitchen and pleaded with her to give him the gun. She refused twice and stated, "I am not going to hurt anybody." Julio, who was standing outside the back door, then told the defendant that if he came inside, "you are going to have to use the gun." A few seconds later, Julio entered the kitchen.

Santiago suggested that he and Julio go outside. The defendant repeatedly requested that Julio stay away from her. Santiago repeated his request that they go outside and began to escort Julio out the door, when Julio jumped the defendant in an effort to get the gun which the defendant was holding behind her back. The gun then went off, fatally wounding Julio.

The defendant was initially charged with manslaughter in the first degree with a firearm, a violation of General Statutes § 53a-55a. By substitute information, she was later charged with manslaughter in the first degree, a violation of General Statutes § 53a-55 (a) (3).[2]

---

[2] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

The defendant pleaded not guilty and elected a jury trial. After a trial, the jury returned a verdict of guilty to the lesser included offense of manslaughter in the second degree, a violation of General Statutes § 53a-56.

The defendant's first claim is that the trial court erred in its instructions on circumstantial evidence. She claims that her constitutional rights were violated when it instructed the jurors that an inference could be drawn if it was "more probable than not that the fact to be inferred is true." See, e.g., *State* v. *Rodgers,* 198 Conn. 53, 57–58, 502 A.2d 360 (1985).

We need not address the state's argument that the defendant failed to make a specific exception to the language of the charge. As we have consistently held, a claim that the court's instruction unconstitutionally diluted the state's burden of proof, which is adequately supported by the record, is a proper issue for review under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). See *State* v. *Smith,* 201 Conn. 659, 672, 519 A.2d 26 (1986); *State* v. *Smith,* 10 Conn. App. 624, 641, 525 A.2d 116 (1987). Our review of the record adequately supports the defendant's request for an *Evans* review.

The trial court's instruction on circumstantial evidence was as follows: "The State does not have to prove every fact that comes into issue. It is only the essential elements of the crime which I will explain to you which must be proved beyond a reasonable doubt. Proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence.

"This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact or set of facts. Such an inference may be made provided two elements in the application of this rule are satisfied: That the fact from which you are asked to draw the inference has itself been proven

beyond a reasonable doubt and, *that the inference asked to be drawn is not only logical and reasonable but is strong enough that you can find that it is more probable than not that the fact to be inferred is true.* It is your right to draw inferences if you conclude that the facts you find proven reasonably establish other facts by reason and logic and are not the result of speculation, surmise or guesswork." (Emphasis added.) The defendant claims that this instruction impermissibly diluted the state's constitutional burden to prove the defendant's guilt beyond a reasonable doubt. See *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

The numerous cases which have addressed this issue have consistently recognized the constitutional inadequacy of the "more probable than not" language in defining circumstantial evidence. See *State* v. *Whelan,* supra, 755–58; *State* v. *Rodgers,* supra, 57–59; *State* v. *Reddick,* 197 Conn. 115, 131–32, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986); *State* v. *Dullivan,* 10 Conn. App. 474, 477–78, 523 A.2d 1353 (1987); *State* v. *Farrar,* 7 Conn. App. 149, 153–57, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986). Where the principal issue in dispute was intent, an element of the crime established by circumstantial evidence, the trial court's instruction on circumstantial evidence is subject to close scrutiny to determine whether it was constitutionally proper. See *State* v. *Whelan,* supra, 755; *State* v. *Smith,* 10 Conn. App. 624, 641 n.8, 525 A.2d 116 (1987). An instruction on circumstantial evidence is viewed otherwise where the principal issue in dispute is an element not established by circumstantial evidence. Then, the trial court's charge is read as a whole to determine whether it was reasonably possible that the jury was misled by the instruction on circumstantial evidence. See *State* v. *Reddick,* supra, 133.

The state argues that where the defendant's conduct is merely reckless, the court's instruction on circumstantial evidence is not subject to close scrutiny, but the charge must be read as a whole. We disagree with this argument. Recklessness is a criminally culpable mental or conscious state, defined in General Statutes § 53a-3 (13) as an awareness and conscious disregard of a substantial and unjustifiable risk that a result will occur or that a circumstance exists. It is, of necessity, proven by circumstantial evidence to the same extent as intent, defined in General Statutes § 53a-3 (11) as a conscious objective to cause a result or to engage in conduct proscribed by statute.

The principal disputed issue in this case was the defendant's state of mind. The trial court's charge, therefore, is subject to our close scrutiny. See *State* v. *Whelan,* supra, 757; *State* v. *Sullivan,* 11 Conn. App. 80, 95, 525 A.2d 1353 (1987). The specific instruction in issue informed the jurors that an inferred fact could be drawn from a proven fact if they found that such proven fact made it more probable than not that the fact to be inferred from the evidence was true. Such an instruction is erroneous and impermissibly dilutes the state's burden of proof at trial. See *State* v. *Rodgers,* supra, 57–58. It is reasonably possible that the jury could have been misled by the erroneous instruction and based its finding that the defendant acted recklessly upon the improper more probable than not standard. See *State* v. *Whelan,* supra. It is necessary, therefore, to remand the case for a new trial.

The defendant's second claim is that the evidence produced at trial was insufficient to support the judgment of conviction. Although a new trial is ordered because of the erroneous instruction, we must now review this second claim to determine whether the defendant would

be entitled to an acquittal rather than a new trial. See *State* v. *Fernandez,* 198 Conn. 1, 21, 501 A.2d 1195 (1985).

The defendant claims that there was insufficient evidence for the jury to find beyond a reasonable doubt that she caused her husband's death. She claims that since no witness was able to testify who fired the gun, the jury was required to guess who proximately caused the death of Julio Malines. She further argues that the facts presented establish only the possibility that the defendant fired the gun, and do not preclude the theory that the decedent's precipitous action in "jumping" the defendant constituted an efficient intervening cause which broke the causal connection between the defendant's reckless conduct and her husband's death.

Our standard of review on such an issue is well established and limited. The inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence established guilt beyond a reasonable doubt. *Jackson* v. *Virginia,* 443 U.S. 307, 318–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The court there said: "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson* v. *Louisiana,* 406 U.S. [356, 362, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972)]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the

prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." (Emphasis in original; footnotes omitted.) *Jackson* v. *Virginia,* supra, 319; see *State* v. *Scielzo,* 190 Conn. 191, 197–98, 460 A.2d 951 (1983); *State* v. *Stellato,* 10 Conn. App. 447, 452, 523 A.2d 1345 (1987).

The defendant's primary claim is that the allegedly reckless conduct of the decedent in an effort to retrieve the gun in effect broke a link in the chain of legal causation so as to absolve the defendant from criminal responsibility for his death. In order to evaluate the sufficiency of the evidence on this issue, we must refer to the legal standards for establishing proximate cause in a criminal prosecution for manslaughter.

In determining whether the reckless actions of the defendant caused the decedent's death, the jury must find that her actions contributed to his death. *State* v. *Spates,* 176 Conn. 227, 234, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 485 (1979). If the defendant's unlawful conduct can be said to have contributed to the decedent's death, responsibility is not avoided by the intervention of independent causes which have likewise contributed to the death. See *United States* v. *Guillette,* 547 F.2d 743, 749 (2d Cir. 1976), cert. denied, 434 U.S. 839, 98 S. Ct. 132, 54 L. Ed. 2d 102 (1977); 40 C.J.S., Homicide § 11.

"Factually any response of a human being to harm or threat of harm is a consequence of whatever produced such harm or threat, and insofar as the response is a normal one this actual causation is recognized by law. Hence an act resulting in harm or threat of harm is the proximate cause of further harm caused by such response thereto. On the other hand if a human being responds to such a situation in a manner that is clearly

abnormal this is treated by law as the equivalent of an independent intervening force and may be, in fact usually is, superseding." R. Perkins, Criminal Law, p. 622.

The jury could reasonably have found the following facts relevant to the defendant's claim: The defendant was the person who initially held the loaded gun in her hands and threatened her family members. She refused several requests to put the gun down. She also stated that she had three other guns hidden and indicated by her words and actions that she was going to shoot her daughter and her husband. She had the gun in her hand when it was fired as she struggled with her husband when he attempted to take it from her, and killed him.

On the basis of this evidence, we cannot find as a matter of law that the facts presented require a finding that the decedent's conduct constituted a sufficient intervening cause of his own demise so as to break the chain of causation.

Because a new trial is required, we need not address the defendant's third claim that the trial court's instruction on the defendant's failure to testify was improper. The statutory and constitutional requirements for such an instruction are fully set forth in *State* v. *Thurman,* 10 Conn. App. 302, 308–313, 523 A.2d 891 (1987). See General Statutes § 54-84 (b).

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.