STATE OF CONNECTICUT *v.* STANLEY WELLS
(7751)

DALY, NORCOTT and LAVERY, Js.

Argued October 18, 1989—decision released January 9, 1990

*K. Wynne Bohonnon,* for the appellant (defendant).

*Vincent J. Dooley,* deputy assistant state's attorney, with whom, on the brief, were *C. Robert Satti,* state's attorney, and *Lawrence Tytla,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant is appealing from the judgment of conviction, after a trial to the court, of operating an improperly registered boat in violation of General Statutes § 15-144 (h). The defendant claims that there was insufficient evidence to support the trial court's finding that the defendant's boat had been used in Connecticut for more than sixty days in 1988. We find no error.

The following facts are relevant. The Stance is a forty-six foot yacht owned by Stance Maritime Limited,

a subchapter S[1] corporation organized under the laws of the state of Delaware. The defendant and his wife are the sole stockholders of Stance Maritime Limited. The corporation purchased the Stance in December, 1987, and brought the boat to Connecticut in May, 1988. The defendant owns the rights to a slip large enough to accommodate the Stance at the Shennecosset Yacht Club in Groton. Neither the defendant nor the corporation owns any other anchorage suitable for the boat.

Stance Maritime Limited is in the "marine trades business," that is, it charters the Stance for a fee. The defendant had a charter arrangement with the corporation that entitled him to first refusal to charter the boat on weekends. Although he did not execute a separate, formal charter agreement with the corporation each time he chartered the boat, he did pay the daily charter fee.

During the summer of 1988, Ronald Wofford, a boating enforcement officer with the department of environmental protection, visited the Shennecosset Yacht Club on twelve days in June and seven days in July. On eighteen of those nineteen occasions Wofford noted in his log that the Stance was docked at the club. On October 8, 1988, Wofford saw the defendant operating the Stance both at the Shennecosset Yacht Club and later that day at the Essex Marina. When the defendant docked at Essex, Wofford cited him for operating an unregistered vessel.

General Statutes § 15-144 (h) provides that "[a]ny person who operates or any owner who permits the operation of a vessel on the waters of this state which has not been numbered or registered in accordance with the provisions of this chapter . . . shall have committed a violation . . . ." General Statutes

[1] See 26 U.S.C. § 1361.

§ 15-142 (b) requires each vessel with a Connecticut vessel number to be registered in this state. Vessels numbered by another state or by the United States and vessels whose owners hold valid United States Coast Guard documents must, pursuant to § 15-142 (b), also be registered when such vessels are used in Connecticut waters for more than sixty days in any calendar year. Section 15-142 (a) defines "use" as "any launching, mooring or operation of a vessel upon the waters of this state . . . ."

To determine whether the defendant violated § 15-144 (h), it is necessary to determine whether the vessel he was operating, namely, the Stance, was registered as required by § 15-142 (b). At trial, the state and the defendant stipulated that on October 8, 1988, the Stance was documented by the United States Coast Guard. The issue therefore turns on whether the Stance was used in Connecticut waters for more than sixty days in 1988 prior to the October 8 citation.

The defendant's sole claim on appeal is that there was insufficient evidence to prove that the Stance had been used in Connecticut waters for more than sixty days in 1988. He argues that the only direct evidence was Wofford's testimony that he noted the presence of the vessel at the Shennecosset Yacht Club on eighteen days during the summer of 1988 and on October 8, the day he issued the citation. The defendant further argues that the circumstantial evidence elicited at trial was insufficient to prove that the vessel was in Connecticut for an additional forty-two days. We disagree.

"Our standard of review on such an issue is well established and limited. The inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence established guilt beyond a reasonable doubt." *State* v. *Malines,* 11 Conn.

App. 425, 431, 527 A.2d 1229 (1987). " 'Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [*Jackson* v. *Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)]." *State* v. *Malines,* supra, 431; see also *State* v. *Whittingham,* 18 Conn. App. 406, 413, 558 A.2d 1009 (1989). The following evidence adduced at trial is relevant to a determination of whether the Stance was used in this state for more than sixty days. The defendant testified that he and his wife, the only stockholders of Stance Maritime Limited, are Connecticut residents. The defendant further testified that he owned the rights to a slip at the Shennecosset Yacht Club and that the Stance had been moored there from time to time during the summer of 1988. He was unable to recall specifically, however, the exact periods of time that the Stance spent in Shennecosset. Neither the defendant nor the corporation owns any other slip in Connecticut or elsewhere at which the Stance might have been moored. Moreover, no slip rental receipts were introduced nor was any other evidence offered to show that the corporation stored the boat out of the state between charters. The defendant testified that the Stance had never been to its supposed "home port" of Philadelphia, nor had it plied the waters of the state of the corporation's organization, Delaware. None of this evidence was contradicted at trial. In sum, the only available evidence leads logically and reasonably to the conclusion that, between charters, the Stance was moored at the Shennecosset Yacht Club.

The defendant testified that the Stance was first brought to Connecticut in May, 1988. Wofford cited the defendant for operating an unregistered vessel on October 8, 1988. If it is assumed that the vessel first entered Connecticut waters on May 31, 1988, the

period from June 1, 1988, to October 8, 1988, includes one hundred thirty days. Evidence from two sources indicates that the Stance was chartered for fifty-seven days during this period. First, the defendant testified that he personally chartered and used the boat forty-four days and that other customers chartered it for thirteen. Second, he testified that during the summer of 1988 the boat generated $17,000 in charter income. Dividing that figure by the $300 daily rental rate yields fifty-seven. When we exclude these days entirely from the one hundred thirty day period, we are still left with seventy-three days on which the only available evidence strongly suggests that the boat was moored at Shennecosset.

"In reviewing claims concerning the sufficiency of the evidence, this court makes no distinction between the probative force of direct and circumstantial evidence. *State* v. *Cates,* [202 Conn. 615, 627, 522 A.2d 788 (1987)]." *State* v. *Uretek, Inc.,* 207 Conn. 706, 715, 543 A.2d 709 (1988). In light of the evidence that the boat's owners could readily store the boat at the Shennecosset Yacht Club between charters, the evidence that Wofford noted its presence in the yacht club on nineteen different occasions, the defendant's testimony that the boat was moored there for certain indeterminate periods of time, and, most important, the lack of any evidence suggesting that the boat was kept elsewhere between charters, it was reasonable for the court to find beyond a reasonable doubt that the boat was moored, hence, "used"; General Statutes § 15-142 (a); in Connecticut waters for more than sixty days in 1988.

Given this finding, by October 8, 1988, the boat was required to be registered in Connecticut. General Statutes § 15-142 (b). It was not. Immediately before issuing the citation on October 8, Wofford observed the

defendant operating the Stance. Thus, the trial court did not err in finding the defendant guilty of operating an unregistered vessel.

There is no error.

In this opinion NORCOTT, J., concurred.

DALY, J., dissenting. The trial court, in responding to the defendant's motion for articulation that requested an explanation of the court's finding that there was sufficient circumstantial evidence to convict the defendant of operating an improperly registered boat, stated that "the court has twenty-eight separate dates between May and October 8, 1988 when beyond any and all doubt the Stance was in Connecticut waters. From this incontrovertible evidence and considering the span of time (from May to October 8) the court finds and is of the opinion beyond a reasonable doubt that the Stance was used in Connecticut waters during 1988 on more than sixty days."

Clearly, the incontrovertible evidence that the Stance was in Connecticut waters for twenty-eight days was not sufficient to find that the vessel was used for more than sixty days. Moreover, the "span of time" itself does not rise to the level of supplying the necessary circumstantial evidence warranting the finding that the state proved beyond a reasonable doubt that the Stance was used in Connecticut waters for an additional thirty-two days. The state has thus failed to prove that the boat had been used in Connecticut waters for more than sixty days, an essential element for convicting this defendant of operating an improperly registered boat.

Accordingly, I dissent from the majority's holding that the trial court could have reasonably concluded that there was sufficient evidence to convict the defendant of this offense.