[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On September 1, 2000 the Department of Children and Families (DCF) filed a petition alleging that the three children, Hans (b1984) Tyson (b1988) and Maria (b1991) were neglected because they were denied proper care and attention, physically, educationally, emotionally or morally. Conn. Gen. Stat: § 46b-120 (8)(B). Pro forma denials were entered; the mother was custodial parent All three petitions include a notation of jurisdictional facts that on August 28, 2000 during a hearing on a Restraining Order the judge had "ordered the children into DCF care because of the cross complaints about abuse and neglect."; a single summary of facts filed with the Han's petition noted that the custody CT Page 12057 order was vacated on August 29, 2000 and children returned to mother. Practice Book § 32-1(b).
At father's request, the juvenile court on November 22 ordered a psychological evaluation of the mother but the evaluation covered the family. The court confirmed maternal custody on November 29; the disruptive aunt was to vacate Grandmother's home where the mother and children were living. Although there was no adjudication, the father filed two motions on December 28, 2000, seeking sole custody of the children. In addition to the two custody motions, the attorney for thefather obtained a show cause order for an order of temporary custody for Tyson and Maria. By agreement among the parties, on January 2, 2001, the court granted joint custody of the children to the parents with physical custody to the father, subject to supervised visitation; the children hoped to return to reunify with mother. On January 31, 2001, the father moved to reopen the previous order which was modified on March 14, to shift sole custody to the father with supervised visitation with the mother. A psychiatric evaluation was ordered for the mother as a follow-up to the psychological.
Although the petitions listed only one ground of neglect, the parties had assumed and negotiated a second ground (permitted to live, etc.). C.G.S. § 46b-120 (8)(c). By agreement, on July 18, the petitions were so amended without any continuance. P.B. § 35-1(c). Under the circumstances the earlier adjudication date should remain. Although the hearing was not bifurcated, disposition cannot be considered until the adjudicatory phase has concluded. P.B. § 33-3(b). On adjudication the court is limited to events preceding the date of the petition and the amendment date. P.B. § 33-3(a).
The father testified for DCF, the mother advised the court she would remain silent under C.G.S. § 46b-137 (b) and P.B. § 34-1(a). The court did not consider her declination to be an admission or to lessen the burden of proof of the petitioner. Except for Defendant's Exhibit 1, she offered no rebuttal except cross exam and Han's testimony. The DCF social worker testified and a study and two addendum became State Exhibit F, G, H.
Each party has an attorney. The mother has a guardian ad litem as do the three children. Denials having been entered, the two day trial started on July 18, 2001 and concluded the next day. Because of vacation conflicts, the court was unable to schedule a decision from the bench.
 I
In the delicate realm of parent-child relationship, the law does not CT Page 12058 prefer state intrusion. In re Juvenile Appeal (Anonymous), 177 Conn. 648,662 (1979); In re Juvenile Appeal (83-CD), 189 Conn. 276 (1983). There is a difference between parents seeking court assistance in a domestic relations dispute and the intervention of the state against the parents in a child protection matter; as of the trial, no action had been filed in domestic court. Marital discord can be disconcerting to the children but that distress does not necessarily define statutory neglect. For example, the needs of an infant are differentiated from the needs of a special needs infant. In re Carl O., 10 Conn. App. 428 (1987). Whether the principal motivation of the state is family preservation or child permanency, before the court considers disposition the state still must establish by a fair preponderance of the credible evidence an entry point — one of the statutory grounds. P.B. Sec. 33-3 (b). The burden to substantiate the allegations of neglect in the petition rests with the DCF petitioner. P.B. § 33-4. That burden not having been met, the court need not consider any dispositional relief. The petition is denied.
 II
The mother concedes she has PTSD and had a recent major depression and has been under care at Community Mental Health Center at Bachus Hospital from March 1997; she takes prescribed anti-depressant medication since October 1999. The mother has been a disorganized, voluble historian, somewhat hysterical, she fancies herself as Bohemian. There has been marital discord for sometime: the mother in the presence of Maria in April 1997 threatened the father with a rifle; the gun misfired but the parents didn't separate until early May 1999 with the children residing with the mother in the family home. However, without income to supplement child support the home was foreclosed in April 2000. The father attempted unsuccessfully to convince her to move before the eviction. The home condition deteriorated. Father exhibit 1-3. In the early fall of 2000 she was physically ejected with all the home furnishings and belongings carted off by the sheriffs; the mother created a scene. She was unable to retrieve the stored items. Bonded to her children she was now out of home, husband and income. Her intensified moods were directed against her husband. In July 2000, there were disturbances caused by the mother against him, sometimes in presence of the children. In that month, the mother was hospitalized for about a week and medicine helped her moods considerably; the father had custody during her hospitalization. In August 2000, the children resided with the maternal grandmother along with the mother. That home was crowded, cluttered and had an odor. Maria and Tyson were unhappy with their aunt and cousin and preferred to be in the mother's home. She disappointed Maria at the child's birthday party. After a confrontation with her sister, the mother took the children to Bachus emergency room in July 2000 to seek a family shelter; instead she CT Page 12059 was placed in a psychiatric ward and the children moved to the father. An ex parte Restraining Order was granted on August 3, 2000. (Further Orders against the mother were issued on August 9 and August 14, 2000. One Order remains in effect). Apparently unaware of any Restraining Order, she sought the location of the children resulting in an out of control confrontation in front of Hans on August 8, 2000 with the police over compliance.
In January 2001 supervised visits were initiated. The visits had gone badly so supervised visits were suspended in January 2001, reinstated in March 2001, ended on May 1, 2001 at mother's request. On January 24 during a visit, Maria was brought by ambulance to the hospital for a hyperventilation episode. No expert testimony was offered on the situation.
Hans returned to grandmother's house. Apparently Hans believes his residence protects his school choice. However relations between father and Hans is turbulent. Hans testified, accusing his father of current alcoholism; his time frame was not credible. The father complains the mother parentifies Hans. It is perhaps significant that Hans chose not to live with his father. Under the watchful overview of the mother, Hans has received Special Education since kindergarten as ADHD. The Sprague Public School has been cooperative with planning for Hans: homebound tutoring and now the Learning Clinic. The school has done three Han's psychological evaluations from 9/10/99 to 8/27/00: ADHD Oppositional Behavior, mood disorder somewhat developmentally delayed though intelligent. At the mother's request the school social worker was seeing at least one child to resolve possible issues arising from the domestic situation. The parents reported no current mental health concerns about the children. Presently, DCF is providing counseling for Tyson and Maria who are doing well without any behavioral problems. The therapist is a social worker at United Services who did not testify or provide a report.
Despite the stress on the mother she arranged for clothing for the children She has been personally involved in their education. She recognizes the needs of the children who are active in the community. She can be articulate and bright. The father reports the mother began to over commit herself about five years ago in civic and political activities, as well as a plan to start a spring water company. He would have preferred she secured full time employment to financially aid the five unit family. (She may now be employed). On the other hand, the mother blames the present situation to the February 1999 separation. Apparently the father read erotic passages in his wife's personal journal and had difficulty with her naive explanation that the entries were private and fantasy. CT Page 12060
The marriage was under financial strain because of the mother's unavailability for a full time job, because of her involvement with many civic and political organizations. Both parents have been unrealistic about their marital plight and unable to jointly resolve the issues. The father concedes a DWI in 1994 or 1995, and in May 1999, he was depressed and drank, leading to a detox week at Stonington. Following his stay at Stonington, he failed to engage in recommended aftercare. He has remained sober.
The children have never been physically abused but have observed the parents arguing. There has been extreme marital discord between the spouses including the mother's verbal abuse and property damage but no one has suggested that the children are in any physical danger from the mother. Both parents appear to have a good relationship with the children. She is still an affectionate mother when not stressed and the children love her. If mother possesses psychological impairments which prevent her from satisfactory discharging childcare responsibility, she appears to have managed. The mother has a positive relationship with the children. The father recognizes the possibility of some emotional abuse to the children because of marital discord. As of February 16, 2001, Maria wished to live with her mother and visit father; Tyson slightly favored his mother; and Hans wished to continue living at his grandmothers. By then, however, father had custody.
 III
Mental illness is not a ground for neglect adjudication. The condition is significant only as it impacts upon the parent's ability to function as a parent. In re Nicolina T., 9 Conn. App. 598, 607 (1987). That ability must relate to the situation of the child. While testimony of professionals is given great weight, those conclusions need not be accepted by the court. In re Michael M., 11 Conn. App. 427, 499 (1987).
Dr. Mantell, the court appointed psychologist, evaluated the parents on December 16, 2000 for a summary report and on February 15, 2001, resulting in a full report. State Exhibit D. The children were not referred for individual psychological evaluations. By agreement he did not testify. While Dr. Mantell speculates that the children have been traumatized by their family life, he concedes that he knows the children slightly and superficially. Dr. Mantell found it remarkable that the children attend school regularly, with satisfactory progress, without any school concerns about their behavioral and emotional status. All three children presented as very pleasant, polite and well socialized. The children were in good spirits showing a positive connection to both parents. The two younger children asked to remain with mother and CT Page 12061 cooperate with her in a residence conversion project.
Dr. Mantell indicated that the mother did not score well on the various psychological tests. He felt her present treatment was problematic. As a result of Dr. Mantell's concerns about the mother, the court ordered a psychiatric evaluation.
The parties stipulated to a report from the mother's current psychiatric clinician. Rosemarie Neilson, LCSW, which reported the mother was compliant with treatment for an anxiety disorder and has made significant gains. The clinician has had limited opportunities to assess mother/child interaction. Even after a phone conversation with the court psychiatrist, as of July 16, 2001 Neilson still concluded "Her anxiety disorder is at this time under effective control and having this disorder, in and of itself does not constitute any specific threat to the well-being of her children". Respondent's Exhibit 1.
Dr. David Koulee, a qualified psychiatric expert, under court order evaluated the mother on February 5, 2001, and testified. He has neither seen or evaluated the three children. He reviewed court records and conferred by phone with the mother's therapist, but was unable to contact the mother's psychiatrist. State Exhibit B. He was critical of the mother's present treatment plan at Bacchus. He was pessimistic about any improvement by the current therapy, as he claimed that the treatment addressed the incorrect diagnosis. The mother's recent behavior does call into question the efficacy of the Bacchus approach.
Dr. Kurles concluded the mother had a major depression, single episode, in partial remission; and a significant personality disturbance. If her stressors — lodging, employment and income — were removed, she should be better. With available medication and therapy her disorder can improve significantly. However, while the mother's judgements are effected by her disorder, not having seen the children the psychiatrist does not know the effect if any, on the children.
 IV
The court finds that the petitioner has not proven by preponderance of the evidence as of the adjudication date that the children were neglected either by being denied proper care and attention, physically, educationally, emotionally or by being permitted to live under conditions, circumstances or associations injurious to their well-being. C.G.S. § 46b-120 (8)(B)(C).
While the state can act before harm occurs to protect the health and welfare of the children without waiting for actual harm, the petitioner CT Page 12062 has not proven by preponderance of the evidence as of the adjudication date the existence of a predictive neglect condition. In re Michael D.,58 Conn. App. 119, 124 (2000).
Accordingly the petitioner is denied.
The court suggests:
1. Because of concerns expressed by the two evaluations and DCF, the mother should
review her mental health program.
2. DCF might stay involved on a protective services basis for a limited period.
3. The parents should agree on child visitation, even if initially
supervised.
4. This opinion does not bar either parent from appropriate recourse to the courts.
Samuel S. Goldstein Judge Trial Referee