[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO SUPPRESS
The defendant William L. Ankerman ("defendant") has moved to suppress statements contained in a letter dated July 6, 1998 to the Statewide Grievance Committee ("committee") on the grounds that admission of the letter would violate his rights under the fifth amendment to the United States constitution and article first, § 8 of the Connecticut constitution.[1] The defendant contends that he was required to report the information contained in the letter to the committee by virtue of the Rules of Professional Conduct and the Practice Book and therefore the statements in the letter were involuntary. He also contends that the committee is "sufficiently associated with the state" so that the letter cannot be used in a criminal proceeding.
The defendant and the state have stipulated to the following facts:
1. At all relevant times, the defendant, William L. Ankerman, was an attorney admitted to practice before the courts of Connecticut.
2. Mr. Ankerman's firm, Ankerman Smith, was retained to represent a minor, Elizabeth Forbes, in connection with an accident on November 3, 1992, in which Ms. Forbes was injured.
3. On December 7, 1993, the Wallingford Probate Court approved an application to compromise the claim of Elizabeth Forbes, by means of a gross settlement of $100,000, of which Ms. Forbes, after deduction of attorney's fees, costs and similar expenses, would receive a net amount of $59,039.45.
4. By letter dated July 6, 1998, Mr. Ankerman wrote to the Statewide Grievance Committee, making the statements which are the subject of the motion to suppress.
5. When Mr. Ankerman wrote the letter of July 6, 1998, to the Statewide Grievance Committee, he had not been ordered to do so by the probate judge, the grievance committee itself, or the committee's counsel.
6. At the time the letter of July 6, 1998, was written, Mr. Ankerman was not under investigation by the Statewide Grievance Committee.
7. At the time the letter of July 6, 1998, was written, Mr. Ankerman was not under arrest nor in custody. The letter was not the product of any interrogation.
In setting forth his arguments, the defendant clearly understands that the fifth amendment only protects individuals from compelled self-incrimination and that the source of the compulsion must be some state action. These predicates are insurmountable hurdles under the facts CT Page 14606 of this case.
"Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." Miranda v. Arizona,384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "Voluntary statements of any kind are not barred by the fifth amendment." State v.Vitale, 197 Conn. 396, 412, 497 A.2d 956 (1985). Moreover, the privilege against self-incrimination is not generally self-executing, rather it must be asserted in a timely fashion. See State v. Smith, 201 Conn. 659,664, 519 A.2d 26 (1986). "`[T]he [Fifth] Amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been "compelled" within the meaning of the Amendment. United States v. Monia, [317 U.S. 424, 427 (1943)] (footnote omitted).'" Minnesota v. Murphy,465 U.S. 420, 427, 104 S.Ct. 1136, 79 L.Ed.2d 409, reh. denied,466 U.S. 945, 104 S.Ct. 1932, 80 L.Ed.2d 477 (1984).
The defendant argues that as a result of certain ethical duties set forth in the Rules of Professional Conduct, specifically Rules 3.3(a)(1), 8.1(2), 8.3(a), 8.4(2) and 8.4(3), and the provisions of Practice Book § 2-43(a), he was compelled to report the subject matter contained in his letter of July 6, 1998 to the Statewide Grievance Committee. A reading of the unambiguous terms of these rules provides no support for his contention. Moreover, a thorough search of Connecticut's formal and informal ethical opinions revealed no authority to support this claim either.[2]
Although rule 8.4(2) sets the general standard that "[i]t is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," the rules did not require the defendant to reveal anything about himself to the Statewide Grievance Committee.[3]
For example, rule 8.3[4] "describes the circumstances under which an attorney must report ethical violations of other attorneys or judges. Failure to abide by the dictates of Rule 8.3 is misconduct and thus a violation of Rule 8.4." (Emphasis added.) Connecticut Bar Association,The Professional Responsibility Reference Guide (2000), Informal Opinion 94-33. The mandate imposed by the rule is to report the unethical conduct of others under certain prescribed circumstances.[5] See Id., Informal Opinions 99-51, 96-20. Even when a lawyer has violated the provisions of Rule 1.15(a), "Rule 8.3 does not contain any requirement that a lawyer report himself or herself." Id., Informal Opinion 97-38. Indeed, even if the rules could be read to mandate self-reporting under certain circumstances, there is no question that the defendant's fifth amendment privilege would have trumped any such mandate. See Id., Informal Opinion CT Page 14607 89-21. Thus, the rules did not require the defendant to make the incriminating disclosures contained in his letter.
The defendant's mistakenly relies on cases involving mandated disclosures, such as Gentile v. Altermatt, 169 Conn. 267, 304-07,363 A.2d 1 (1975) and "penalty" cases[6] such as Garrity v. NewJersey, 385 U.S. 493 (1967), where an individual who was compelled to appear and testify was threatened with being discharged from his employment if he exercised his fifth amendment privilege. The more apposite authority is Minnesota v. Murphy, supra, 465 U.S. 420, where the Supreme Court held that a probationer was not compelled to make incriminating disclosures simply because he was required to attend meetings with his probation officer and answer the officer's questions. Even though Murphy's probation could have been revoked if he failed to answer the questions truthfully, the court did not view the circumstances as giving rise to a self-executing fifth amendment privilege. "[W]e presume that most people are aware that they need not answer an official question when a truthful answer might expose them to criminal prosecution. `At this point in our history virtually every schoolboy is familiar with the concept, if not the language,' of the constitutional ban on compelled self-incrimination. Michigan v. Tucker, 417 U.S. 433,439 (1974). We thus take for granted that, in most instances, when a person discloses damaging information in response to an official inquiry, he has made an intelligent decision to waive his Fifth Amendment rights."Id., 465 U.S. 450-51. If the fifth amendment privilege is not self-executing in response to an official inquiry from which negative consequences could potentially flow, it certainly cannot be held to self-executing in this case where no official proceeding was being conducted by the committee at the time the defendant sent his letter.
The defendant chose to make the statements contained in the July 6, 1998 letter. He did so voluntarily and without being ordered to do so by the probate court, the grievance committee or the committee's counsel, as the stipulated facts reveal. Further, he was not under investigation at the time and the statements were not the product of any custodial interrogation. In light of all the stipulated facts, the court concludes that the statements contained in the letter were made voluntarily and without compulsion of any kind. The statements can be used against the defendant.
For all the reasons stated above, the defendant's motion to suppress is denied.
LINDA K. LAGER, JUDGE