STATE OF CONNECTICUT *v.* BARRY SMITH
(12444)

STATE OF CONNECTICUT *v.* MARK LOTT
(12452)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and BERDON, Js.

Argued October 9—decision released December 30, 1986

Louis S. Avitabile, special public defender, for the appellant (defendant in the first case).

*Alan D. McWhirter,* assistant public defender, with whom, on the brief, was *Raymond J. Quinn, Jr.,* public defender, for the appellant (defendant in the second case).

*Linda N. Knight,* assistant state's attorney, with whom, on the brief, was *John A. Connelly,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Barry Smith, was charged in a substitute information with the crimes of sexual assault in the first degree in violation of General Statutes § 53a-70, and unlawful restraint in the first degree in violation of General Statutes § 53a-95. His trial was consolidated with that of a codefendant, Mark Lott, who was charged in a substitute information with identical offenses arising from the same incident. Both defendants were convicted by a jury as charged and sentenced to terms of imprisonment.

All charges arose from the complaint of a sixteen year old girl. At trial, the victim testified that on December 26, 1982, she had attended a midnight public skating session at a roller skating rink in Waterbury. When she left the rink at approximately 4 a.m. she met the defendant Lott who forced her into the front seat of

his automobile in which the defendant Smith was a passenger. She was then driven about Waterbury and eventually to a building in Waterbury where she was pushed down the driveway into a basement apartment, forcibly restrained, disrobed, and subjected to multiple sexual assaults by both Smith and Lott.

The defendant Smith claims that the trial court erred by: (1) failing to give a no adverse inference charge and by instructing the jury that it could consider Smith's interest in the outcome of the trial in assessing his credibility; (2) failing to instruct the jury concerning the credibility of witnesses and the interest and motive of the complaining witness in accordance with his request to charge; (3) consolidating his trial with that of Lott and failing to grant his motion for a new trial on the ground that the consolidation of the trials worked a substantial injustice; and (4) instructing the jury concerning circumstantial evidence and reasonable doubt in such a way as to dilute the required standard of proof.

The defendant Lott joins in Smith's second claim of error and further contends that the trial court erred by joining his trial with that of Smith. We find no reversible error.

## I

Smith first claims that the trial court erred by failing to give a no adverse inference instruction. We disagree.

Smith, in the presentation of his own defense, after calling a number of witnesses, exercised his right not to testify and rested. At that time there was an extensive colloquy with the trial court which clearly demonstrates that Smith was cognizant of his right to take the stand or to refuse to do so. See *Harris* v. *New York*, 401 U.S. 222, 225, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971). At the time he opted not to be a witness in his own case, Smith informed the trial court that he would request

a charge at the conclusion of the evidence that the jury was to draw no adverse inferences from his failure to testify.

Thereafter, Lott, in his defense, outside the presence of the jury, requested that Smith take the witness stand. Smith, after consulting with his attorney, agreed to testify and answered in the affirmative when asked by the trial court whether he was willing to testify and "preferred" to take the stand. Then, in the presence of the jury, Smith related a version of the events of the morning of December 26, 1982, which was exculpatory of both himself and Lott. Subsequently, Smith filed a request that the trial court instruct the jury that no adverse inferences could be drawn from his "failure . . . to testify in his own behalf in his own case." The court refused to so charge.

We think that Smith, in his zeal to obtain the best of all worlds, exalts form over substance. It is true that an accused who exercises his right to refuse to testify has a constitutional right to a no adverse inference instruction when requested; *Carter* v. *Kentucky,* 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981); and that General Statutes § 54-84 (b)[1] mandates that a trial court instruct the jury that it "may draw no unfavorable inferences from the accused's failure to testify," unless the accused requests otherwise. *State* v. *Burke,* 182 Conn. 330, 333, 438 A.2d 93 (1980). The raison d'etre for both the constitutional right and the statute,

---

[1] "[General Statutes] Sec. 54-84. TESTIMONY OR SILENCE OF ACCUSED. (a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

however, is to reduce to a minimum jury speculation as to why an accused would remain silent in the face of a criminal accusation. "No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must . . . use the unique power of the jury instruction to reduce that speculation to a minimum." *Carter* v. *Kentucky,* supra, 303. "Our legislature has prescribed § 54-84 (b) to be the jury instruction that must be given to reduce speculation to a minimum." *State* v. *Cobb,* 199 Conn. 322, 324, 507 A.2d 457 (1986).

In this case, however, Smith did not stand mute. When called by the codefendant, he voluntarily took the witness stand and testified to his version of the incident for which he was on trial, even though he had the absolute right to refuse to do so. *United States* v. *Doe,* 655 F.2d 920, 926 (9th Cir. 1980). His testimony was exculpatory not only of the codefendant Lott but of himself and, if believed by the jury, would obviously have required the acquittal of both. Further, the trial court instructed the jury that all the evidence introduced at the joint trial by either party could be used in either case, so that Smith's exculpatory testimony inured to his benefit. There was no cause, in this instance, therefore, for the jury to speculate about his silence. Under the circumstances, a no adverse inference instruction was neither constitutionally nor statutorily required or warranted.

Smith also claims that the trial court erred by not obtaining a valid "waiver" of his right to refuse to testify before he took the stand because the court failed to inform him that if he testified he would not receive a no adverse inference instruction. We disagree. Our federal and state constitutions proscribe only compelled self-incrimination; *S.E.C.* v. *Jerry T. O'Brien, Inc.,* 467 U.S. 735, 742, 104 S. Ct. 2720, 81 L. Ed. 2d 615 (1984); *United States* v. *Monia,* 317 U.S. 424, 427, 63 S. Ct.

409, 87 L. Ed. 2d 376 (1943); *State* v. *Iasevoli,* 188 Conn. 325, 334, 449 A.2d 996 (1982); which includes the unqualified right of an accused to refuse to testify at trial. *Harris* v. *New York,* supra, 225. In this instance the record reveals that Smith was aware that he could elect whether to refuse to take the stand or to testify either in his own case or that of the codefendant. While represented by counsel, however, he voluntarily testified when called by Lott. He was obviously not compelled to testify. There is no indication that he would have suffered any penalty if he had invoked his fifth amendment privilege; yet he failed to assert it. " '[T]he [Fifth] Amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been "compelled" within the meaning of the Amendment. *United States* v. *Monia,* [supra, 427].' " *Minnesota* v. *Murphy,* 465 U.S. 420, 427, 104 S. Ct. 1136, 79 L. Ed. 2d 409, reh. denied, 466 U.S. 945, 104 S. Ct. 1932, 80 L. Ed. 2d 477 (1984). "Witnesses who failed to claim the privilege were once said to have 'waived' it, but we have recently abandoned this 'vague term,' *Green* v. *United States,* 355 U.S. 184, 191 [78 S. Ct. 221, 2 L. Ed. 2d 199] (1957), and 'made clear that an individual may lose the benefit of the privilege without making a knowing and intelligent waiver.' *Garner* v. *United States,* [424 U.S. 648, 654 n.9, 96 S. Ct. 1178, 47 L. Ed. 2d 370 (1976)]." *Minnesota* v. *Murphy,* supra, 428; see *United States* v. *Janoe,* 720 F.2d 1156, 1161 (10th Cir. 1983). "[T]he fifth amendment right not to incriminate oneself is not self-executing and a person desirous of claiming his fifth amendment privilege must assert it in a timely fashion." *State* v. *Huey,* 199 Conn. 121, 129, 505 A.2d 1242 (1986). The fact that the trial court did not inform the defendant that a no adverse inference

charge was unavailable if he testified does not render his testimony compelled within the meaning of the fifth amendment. There is no merit to this claim.

Smith also contends that the trial court committed reversible error by instructing the jury that it could consider his interest in the outcome of the case in evaluating his credibility. It is Smith's claim that such an instruction should not have been given because he testified, not in his own case, but as a witness for the codefendant Lott. Under the circumstances he has manufactured a distinction without a difference.

Smith retained his interest in the case and his status as a defendant throughout the joint trial and the jury was instructed that it could consider Smith's exculpatory testimony in his case, as well as in the case of the codefendant Lott. Smith's credibility was therefore an important factor in determining his guilt or innocence. As with any accused who takes the witness stand the jury was entitled to consider Smith's interest in the outcome of the joint trial in weighing his testimony. We have repeatedly held that an instruction bringing that consideration to the attention of the jury is appropriate. *State* v. *Higgins,* 201 Conn. 462, 518 A.2d 631 (1986); *State* v. *Mack,* 197 Conn. 629, 636, 500 A.2d 1303 (1985); *State* v. *Frazier,* 194 Conn. 233, 239, 478 A.2d 1013 (1984); *State* v. *Roos,* 188 Conn. 644, 645, 452 A.2d 1163 (1982).

## II

Both defendants claim that the trial court deprived them of due process of law by failing to instruct the jury concerning the credibility of the witnesses in accordance with Smith's request to charge. Included in Smith's requested charge was the following sentence: "If, however, you conclude that a witness has not only testified falsely but that he or she has done that intentionally or wilfully, this fact casts a serious doubt upon

all his or her testimony, and you might well conclude that you cannot accept any of it." The prerogative of the jury to discredit the entire testimony of a witness if it determines the witness has intentionally testified falsely in some respects is often referred to by the Latin maxim falsus in uno, falsus in omnibus. *Dubuque* v. *Coman*, 64 Conn. 475, 479, 30 A. 777 (1894).

The defendants contend that, because of contradictions within the victim's own testimony and conflicts between her testimony and that of other witnesses, the jury could have found that the victim intentionally falsified her testimony in certain respects. They argue, therefore, that, because they based their defenses and final arguments on the premise that the victim's entire testimony should be discredited, it was error for the trial court to fail to charge as requested.

The falsus in uno instruction requested by Smith is permissive, not mandatory, and rests in the sound discretion of the trial court. *State* v. *Peay,* 165 Conn. 374, 375, 335 A.2d 296 (1973); *Raia* v. *Topehius,* 165 Conn. 231, 234–36, 332 A.2d 93 (1973). The trial court did instruct the jury that, "[t]he credibility of witnesses and the weight to be given their testimony are matters that are especially and particularly within your province to determine" and that the jury was "at liberty to discredit any witness or multitude of witnesses if it deems that it has cause to do so." Further, the jury was told that it was "the sole arbiter of what testimony is to be believed and what testimony is to be rejected. This includes the right to believe part of the testimony and reject the remainder." The jury was also told that it might disregard "all evidence of a discredited witness . . . if it finds the witness to be unworthy of belief in all respects." The fact that the jury was not charged in the exact words requested by Smith was not error. *Cross* v. *Huttenlocher,* 185 Conn. 390, 394, 440 A.2d 952 (1981); *State* v. *Bennett,* 172 Conn. 324, 330, 374

A.2d 247 (1977). The court's instruction, as given, made it abundantly clear to the jury that the credibility of the witnesses was for it to determine and the jury was apprised that it was free to reject the entire testimony of any witness. The court adequately covered the matter of the credibility of witnesses in its charge. *State* v. *Hines,* 187 Conn. 199, 208, 445 A.2d 314 (1982); *Cross* v. *Huttenlocher,* supra; *State* v. *Peay,* supra.

The defendants also claim that the trial court erred by instructing the jury that, "[i]t is neither a doctrine or a rule of law that the jury must disregard all evidence of a discredited witness. The jury may do so, however, if it finds the witness to be *unworthy of belief in all respects.*" (Emphasis added.) The defendants argue, as stated in Smith's brief, that this instruction took from the jury "the option of disregarding all the testimony of any witness, including the complaining witness, because there are *no witnesses who testify falsely in all respects or details of their testimony.*" (Emphasis in original.)

We do not give the instruction complained of the interpretation accorded it by the defendants. The instruction did inform the jury that it could, if it saw fit, disregard all the evidence of a discredited witness if it found "the witness to be *unworthy of belief in all respects.*" (Emphasis added.) That, however, is a far different proposition from the interpretation urged by the defendants which, they claim, required the jury to find that a discredited witness had *testified falsely* in all respects before it could discredit all of his or her testimony. In the context in which the statement was made, immediately followed by the instruction that, "[t]he jury is the sole arbiter of what testimony is to be believed and what testimony is to be rejected," it is obvious that the trial court was simply informing the jury that it could accept part of the testimony of a witness or reject the witness' entire testimony if it found

the witness was not credible at all. Although the court's charge in this respect might have been clearer, it was not error when considered in the context of the court's entire charge on credibility. Individual instructions are not to be judged in artificial isolation from the overall charge. *State* v. *Dolphin,* 195 Conn. 444, 451, 488 A.2d 812, cert. denied, 474 U.S. 873, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State* v. *Reid,* 193 Conn. 646, 660, 480 A.2d 463 (1984).

The defendants further claim that although the trial court instructed the jury generally on the consideration to be given motive, bias, prejudice and interest in weighing the testimony of witnesses, it committed reversible error by failing to give Smith's requested instruction that the jury could consider the motive and interest of the victim specifically in determining her credibility as a witness. To require such a charge there must be evidence that the witness was a culpable party. *State* v. *Keiser,* 196 Conn. 122, 132–33, 491 A.2d 382 (1985); *State* v. *Cooper,* 182 Conn. 207, 212, 438 A.2d 413 (1980). In this case there was no such evidence. There is, therefore, no merit to this claim of the defendants.

### III

Smith next claims that the court erred by consolidating his trial with that of Lott and failing to grant his motion for a new trial on the ground that the consolidated trial worked a substantial injustice to him.

Whether to consolidate or sever the trials of defendants involved in the same criminal incident lies within the sound discretion of the trial court. *State* v. *Vinal,* 198 Conn. 644, 649, 504 A.2d 1364 (1986); *State* v. *King,* 187 Conn. 292, 302, 445 A.2d 901 (1982); *State* v. *Holup,* 167 Conn. 240, 244, 355 A.2d 119 (1974); see Practice

Book § 829.[2] " 'Ordinarily justice is better subserved where the parties are tried together.' " *State* v. *Holup,* supra, 244. " 'Joint trials of persons jointly indicted or informed against are the rule, and separate trials the exception resting in the discretion of the court. *State* v. *Castelli,* 92 Conn. 58, 65, 101 A. 476 [1917] . . . . A separate trial will be ordered where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded.' *State* v. *Varricchio,* 176 Conn. 445, 447–48, 408 A.2d 239 (1979). '[T]he phrase "prejudicial to the rights of the parties" means something more than that a joint trial will probably be less advantageous to the accused than separate trials.' *State* v. *McCarthy,* 130 Conn. 101, 103, 31 A.2d 921 (1943). In the determination of whether substantial injustice is likely to result from a joint trial or whether such injustice has in fact resulted, an important factor to consider is whether the defenses of the codefendant are incompatible and completely antagonistic to each other. *State* v. *Gordon,* 170 Conn. 189, 190, 365 A.2d 1056 (1976); *State* v. *Holup,* [supra, 246]." *State* v. *Haskins,* 188 Conn. 432, 449–50, 450 A.2d 828 (1982). The discretion of the court is necessarily exercised before the trial begins and with reference to the situation as it then appears to the court. *State* v. *Carbone,* 172 Conn. 242, 259, 374 A.2d 215 (1977), cert. denied, 431 U.S. 967, 97 S. Ct. 2925, 53 L. Ed. 2d 1063 (1977); *State* v. *Hart,* 169 Conn. 428, 436, 363 A.2d 80 (1975); *State* v. *Holup,* supra, 244–45.

---

[2] "[Practice Book] Sec. 829. —TRIAL TOGETHER OF INDICTMENTS OR INFORMATIONS

"The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together."

At a pretrial hearing on the defendants' motions to sever, the sworn statements of both Smith and Lott were in evidence. Those statements were mutually exculpatory and gave no indication that any possible defenses of the codefendants were incompatible or antagonistic. Smith, however, brought to the court's attention the possibility that in a joint trial he might choose to remain silent in his own case and testify for Lott. He claimed in that instance a consolidated trial would deprive him of various constitutional rights. He also pointed out to the court the possibility that in a separate trial he might have the opportunity to call Lott as his own witness and remain silent himself thus obtaining the advantage of Lott's testimony and a no adverse interest charge. To deprive him of that possible opportunity, he claimed, would result in a substantial injustice. Neither defendant at that point, however, committed himself to testify at a joint trial nor did Lott commit himself to testify for Smith or Smith for Lott at a separate trial.

To allow a defendant to conjure up possibilities and require the court, on a pretrial motion to sever, to base its decision on the actual occurrence of those possibilities would, in effect, remove all discretion on such a motion from the court. See *State* v. *King,* supra. A worst possible scenario can always be imagined. Further, the *possibility* of obtaining the testimony of a codefendant at a separate trial is insufficient ground to require a severance. *United States* v. *Oxford,* 735 F.2d 276, 281 (7th Cir. 1984); *United States* v. *Dickens,* 695 F.2d 765, 779 (3d Cir.), cert. denied, 460 U.S. 1092, 103 S. Ct. 1792, 76 L. Ed. 2d 359 (1983); *United States* v. *Aloi,* 449 F. Sup. 698, 740 (E.D.N.Y. 1977). It is only when it clearly appears that a joint trial will probably be prejudicial to the rights of the accused that separate trials are required. *State* v. *Haskins,* supra, 450.

The information available to the court when it ruled on the defendants' motions to sever prior to trial indicated that the defenses of Smith and Lott were compatible, not antagonistic. Further, there was no reason for the court to guess at the possible trial strategy of the defendants or to conclude that a joint trial would inevitably result in substantial injustice. The court did not abuse its discretion when it ordered the trials of Smith and Lott consolidated. That does not end our inquiry, however. "The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded. The test for this court is whether the denial of the motion for a separate trial has resulted in substantial injustice to the accused." *State* v. *Klein,* 97 Conn. 321, 324, 116 A. 596 (1922); *State* v. *DeWitt,* 177 Conn. 637, 646, 419 A.2d 861 (1979).

The record does not indicate that Smith ever attempted to call Lott as a witness. We cannot infer any prejudice to Smith from Lott's failure to testify when there is no evidence that he was ever requested to testify or refused to do so or that he would have testified in a separate trial. Smith, when called by Lott, however, voluntarily took the stand, testified at length and exonerated not only Lott but himself. A comparison of Lott's sworn statement with Smith's testimony reveals that if Lott had testified in accordance with his statement he would have substantially reiterated Smith's testimony. It appears, therefore, that Smith was able to place the defendants' version of the incident before the jury, and Lott's testimony would have been cumulative. *United States* v. *Brashier,* 548 F.2d 1315, 1326 (9th Cir. 1976), cert. denied, 429 U.S. 1111, 97 S. Ct. 1149, 51 L. Ed. 2d 565 (1977); *United States* v. *Finkelstein,* 526 F.2d 517, 524 (2d Cir. 1975), cert. denied sub nom. *Scardino* v. *United States,* 425 U.S. 960, 96 S. Ct. 1742, 48 L. Ed. 2d 205 (1976). The fact that Lott called Smith and that Smith then exculpated

Lott and thereafter Lott did not testify would obviously suggest to the jury that Lott agreed with Smith's testimony. Under the circumstances, while separate trials might possibly have been more advantageous to Smith, a joint trial did not result in manifest prejudice or substantial injustice. *State* v. *Vinal,* supra; *State* v. *Haskins,* supra.

## IV

Smith's final claim raised in his supplemental brief is that the trial court's charge on reasonable doubt and circumstantial evidence impermissibly diluted the standard of proof required for conviction.

Smith's claim with regard to the trial court's definition of reasonable doubt appears to be that the court failed to charge in the words of his requested instruction. There is no merit to this claim. *Cross* v. *Huttenlocher,* 185 Conn. 390, 394, 440 A.2d 952 (1981); *State* v. *Bennett,* 172 Conn. 324, 330, 374 A.2d 247 (1977). He also argues, however, that the trial court's instructions concerning circumstantial evidence and the right of the jury to draw inferences diminished the presumption of innocence and relieved the state of its burden to prove all the elements of the crimes charged beyond a reasonable doubt. Initially, we note that Smith's failure to except to this portion of the court's charge ordinarily would preclude review. Practice Book § 854 and § 3063 (now § 4185).[3] We will review Smith's claim, however, because it implicates the fundamental constitutional right that the state prove his guilt beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 361, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Whelan,* 200 Conn. 743, 755–56, 513 A.2d 86 (1986); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

---

[3] "[Practice Book] Sec. 854. —TIME FOR INSTRUCTIONS AND EXCEPTIONS

"The judicial authority shall deliver the instructions to the jury after the closing arguments. Immediately after the conclusion of the charge to the jury, counsel taking exception shall, out of the presence of the jury, state

The trial court instructed the jury that it could draw inferences provided: "First, that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt. Second, that the inference you are asked to draw is not only logical and reasonable, but it is strong enough so that you can find *that is it more probable than not that the fact to be inferred is true.*" (Emphasis added.) This instruction is substantially similar to the jury instruction which resulted in reversible error in two cases recently decided by this court. *State* v. *Whelan,* supra, 755–58; *State* v. *Rodgers,* 198 Conn. 53, 56–59, 502 A.2d 360 (1985).

In both *Rodgers* and *Whelan,* however, the disputed and decisive factual issue at trial was intent, an element of the crimes charged, and an element characteristically proven by circumstantial evidence. *State* v. *Chace,* 199 Conn. 102, 105, 505 A.2d 712 (1986); *State* v. *Farrar,* 7 Conn. App. 149, 155, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986). In this case, on the other hand, the only real issue at trial was the credibility of the victim. Intent was not a disputed factual issue and there was substantial direct evidence of the crimes charged.

Under these circumstances it was not reasonably possible that the trial court's erroneous explanation concerning circumstantial evidence misled the jury. *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed.

distinctly the matter objected to and the ground of the exception. The appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or an exception has been taken immediately after the charge is delivered by the party appealing."

"[Practice Book] Sec. 3063. —ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

2d 795 (1986); *State* v. *Farrar,* supra, 156. The error was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967).

V

Lott also claims that the consolidation of the trials was error. He contends that because the trial court instructed the jury that it could consider Smith's interest in the outcome of the trial in weighing his testimony, the joint trial deprived him of his federal and state constitutional rights to compulsory process. This claim is based on the theory, for which he cites no authority, that the trial court's instruction subjected Smith's exculpatory testimony in his defense to "unnecessary and undue devaluation in the eyes of the jury."

It seems obvious that, since Smith testified fully when requested, Lott was not deprived of any federal or state constitutional right to compulsory process. It would appear that the question is whether the consolidation of the trials and the trial court's instruction regarding Smith's interest resulted in a substantial injustice to Lott because it "devalued" Smith's testimony. We have held on many occasions that a jury instruction similar to that given in this case does not denigrate a defendant's testimony when he testifies in his own behalf. *State* v. *Kurvin,* 186 Conn. 555, 570, 442 A.2d 1327 (1982). Similarly, the instruction did not denigrate Smith's testimony when he testified as a witness for Lott. Substantial injustice means more than that a joint trial may be less advantageous to the accused than separate trials. *State* v. *Haskins,* supra, 450.

There is no error.

In this opinion PETERS, C. J., HEALEY and SHEA, Js., concurred.

BERDON, J., concurred in the result.