STATE OF CONNECTICUT *v.* TEDDY SALMOND
(AC 20477)

Lavery, C. J., and Bishop and Daly, Js.

82

Argued January 17—officially released April 9, 2002

*Sandra J. Crowell*, deputy assistant public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, was *Mary M. Galvin*, state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. In this case, which is the companion to *State* v. *Flowers*, 69 Conn. App. 57, 797 A.2d 1122 (2002), the defendant, Teddy Salmond, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). The defendant claims that the court (1) improperly determined that he was ineligible for youthful offender status, (2) improperly granted, over his objection, the state's motion for joinder and (3)

improperly instructed the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of September 18, 1998, Jordan Welch returned after work to his home in West Haven. A block party was in progress at a neighbor's house. Welch visited the party briefly, returned to his front porch and watched the nearby festivities while drinking a beer in the company of his eleven year old son.

Within minutes, Welch saw a neighbor known to him as "Junkie Jay" emerge from the alley next to his house. Junkie Jay proceeded up the steps of Welch's porch while glancing to his side. Following Junkie Jay's eyes, Welch observed the defendant and his codefendant at trial, Jermano C. Flowers, standing together about ten feet away in front of his porch. As Junkie Jay ascended the steps, he drew a silver or chrome handgun, pointed the gun at Welch and ordered him to surrender his gold chain and religious medallion. Welch told his son to go into the house. Junkie Jay then snatched the chain and medallion from Welch's neck and departed down the steps.

Welch pursued Junkie Jay, but was accosted at the bottom of the steps by the defendant and Flowers. The two men grabbed Welch from the side and pulled him toward the alley, where both men, each wielding a black handgun, beat Welch about the head and attempted to rifle his pockets. The arrival of a police officer, Anthony Pacileo, caused Junkie Jay, the defendant and Flowers to flee.

Welch, who was bleeding from a head wound, described his three assailants to Pacileo. When backup officers arrived, they walked with Welch to the party site and surveyed the crowd. There, Welch identified the defendant, who was taken into police custody. A search of the defendant and the immediate area failed

to produce the stolen articles or any weapons. Neither Junkie Jay nor Flowers was found that evening, and Welch never recovered the stolen medallion and chain.

The following morning, Welch again was sitting on his front porch when he observed Flowers' brother, Stephen Flowers, park a vehicle outside the Flowers residence adjacent to Welch's home. Both men gestured toward each other and began to brawl on the sidewalk. During the fight, Stephen Flowers brandished a black handgun, and Welch retreated inside his home. Welch's wife, who had observed the fracas from inside the residence, called the police.

The police arrived at the scene shortly thereafter, and Flowers' mother consented to a search of the Flowers residence, where Stephen Flowers was apprehended. During the search, Officer Sean Faughnan was detailed to secure the rear yard, which was separated from the Welch yard by a fence. At one point, Faughnan looked through the slats of the fence and saw Jermano Flowers and another man cross the Welch yard and proceed toward the Welch residence. As the men approached the house, Faughnan observed Flowers withdraw a handgun from his waistband. Faughnan drew his own weapon, opened a gate in the fence and confronted both men from a distance of three to five feet. Flowers placed the handgun on the ground and the two men fled the area.

After securing the gun left by Flowers, Faughnan gave chase, directed, in part, by observant neighbors. Faughnan later discovered and apprehended Jermano Flowers, who kicked and spat at the officer while Faughnan was trying to secure him. Flowers subsequently was arrested and charged in connection with the robbery.

The court granted the state's motion to try the defendant and Flowers together. The jury found the defen-

dant guilty of robbery in the first degree. The court sentenced the defendant to a total effective term of twelve years imprisonment, execution suspended after nine years, and five years probation. This appeal followed.

I

The defendant claims that the court improperly determined that he was ineligible for youthful offender status. Specifically, the defendant (1) challenges the adequacy of the investigation of him that was conducted by the office of adult probation to assist the court in determining his eligibility for youthful offender status and (2) claims that the court improperly exercised its discretion in determining that he was ineligible for such status.

The following procedural history is relevant to the defendant's claim. On October 6, 1998, the state charged the defendant with one count of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134.[1] On June 18, 1999, the defendant, who was then seventeen years old, filed an application for an investigation to determine whether he was eligible for youthful offender status.[2] On June 18, 1999, the court, *Flynn, J.*, granted the application, but declined to order that the investigation include a

___

[1] Thereafter, on March 1, 1999, the state filed a substitute information charging the defendant with one count of robbery in the first degree.

[2] General Statutes (Rev. to 1997) § 54-76c provides in relevant part: "In any case where an information or complaint has been laid charging a defendant with the commission of a crime, and where it appears that the defendant is a youth, upon motion of the defendant, his counsel, the state's attorney or the prosecuting attorney, as the case may be, to the court having jurisdiction that an investigation be made of such defendant for the purpose of determining whether he is eligible to be adjudged a youthful offender, the court shall, but only as to the public, order such information or complaint to be filed as a sealed information or complaint. . . ."

mental or physical examination of the defendant. See General Statutes § 54-76d (a).[3]

The office of adult probation investigated the defendant and reported that he satisfied the preliminary requirements for eligibility for youthful offender status. See General Statutes § 54-76b.[4] After receiving the results of the investigation, the court, *Thompson, J.,* held a hearing to determine whether to grant the defendant youthful offender status. During that hearing, which occurred on July 27, 1999, the state argued that the defendant should not be accorded youthful offender status due to the seriousness of the crime.

Defense counsel conceded that robbery in the first degree was a serious crime, but challenged the strength of the evidence against the defendant. Additionally, counsel emphasized that (1) the investigation had dis-

[3] General Statutes § 54-76d (a) provides: "If the court grants such motion or if the court on its own motion determines that the defendant should be investigated hereunder and the defendant consents to physical and mental examinations, if deemed necessary, and to investigation and questioning, and to a trial without a jury, should a trial be had, the information or complaint shall be held in abeyance and no further action shall be taken in connection with such information or complaint until such examinations, investigation and questioning are had of the defendant. Investigations under sections 54-76b to 54-76n, inclusive, shall be made by an adult probation officer. When the information or complaint charges commission of a felony, the adult probation officer shall include in the investigation a summary of any unerased juvenile record of adjudications of the defendant."

[4] General Statutes § 54-76b provides in relevant part: "For the purpose of sections 54-76b to 54-76n, inclusive, 'youth' means a minor who has reached the age of sixteen years but has not reached the age of eighteen years or a child who has been transferred to the regular criminal docket pursuant to section 46b-127; and 'youthful offender' means a youth who is charged with the commission of a crime which is not a class A felony or a violation of subdivision (2) of section 53-21, section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b, who has not previously been convicted of a felony or been previously adjudged a serious juvenile offender or serious juvenile repeat offender, as defined in section 46b-120, or a youthful offender, or been afforded a pretrial program for accelerated rehabilitation under section 54-56e, and who is adjudged a youthful offender pursuant to the provisions of said sections. . . ."

closed that the defendant satisfied the preliminary requirements for eligibility and (2) the defendant still was attending high school. Regarding the results of the investigation of the defendant, he stated: "Obviously, the results of the examination and investigation and questioning in this matter really just determines whether or not he's eligible on his age and things of that nature . . . . I don't think there's anything in the examination, investigation and questioning that Your Honor has in front of you that I can point to other than that he's just saying that it wasn't him, that he was searched almost immediately afterward, and none of the fruits of the crime or the gun were found on him . . . ."

At the conclusion of the hearing, the court declined to grant the defendant youthful offender status. In so doing, the court stated: *"I don't know whether [the defendant] is guilty of this charge or not. He's presumed, presumed to be innocent of this charge and that—that's the situation whether he's tried in the adult court or tried as a youthful offender, and that's not what we're dealing with here today. We're not dealing with whether he's guilty or not of this charge. But as far as the charge itself, a gunpoint robbery, in my mind it's much too serious for youthful offender status, so I'm going to deny the motion."* (Emphasis added.)

A

The defendant claims that the investigation of him that was conducted by the office of adult probation was inadequate as a matter of law. Therefore, he argues, his right to due process under the fourteenth amendment to the United States constitution was violated.[5]

---

[5] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

The record discloses that the defendant's claim is unpreserved.[6] "When a claim is raised for the first time on appeal, our review of the claim is limited to review under either the plain error doctrine; [Practice Book § 60-5]; or *State* v. *Golding*, [213 Conn. 233, 239–40, 567 A.2d 823 (1989)]." *State* v. *Barnett*, 53 Conn. App. 581, 600, 734 A.2d 991, cert. denied, 250 Conn. 918, 738 A.2d 659 (1999). The defendant did not request review of his claim under either of those doctrines. " 'As this court has previously noted, it is not appropriate to engage in a level of review that is not requested.' *State* v. *Hermann*, 38 Conn. App. 56, 65, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995)." *State* v. *Barnett*, supra, 600. Accordingly, we decline to review the claim.

B

The defendant claims also that the court improperly exercised its discretion in denying his youthful offender application. Specifically, he claims that the court's oral ruling discloses that the court violated § 54-76d (b) by considering only the severity of the charge in ruling on his application for youthful offender status.

Section 54-76d (b) provides in relevant part: "[T]he court, in its discretion based on the severity of the crime, which shall also take into consideration whether or not the defendant took advantage of the victim because of the victim's advanced age or physical incapacity, and the results of the examinations, investigation and questioning, shall determine whether such defendant is eligible to be adjudged a youthful offender. . . ." Thus, under § 54-76d (b), a court, in determining eligibility for youthful offender status, is required to consider (1) the severity of the alleged crime, (2) whether the victim was of advanced age or had a physical incapacity and, if so, whether the defendant targeted

---

[6] During the hearing, the defendant neither objected to the report nor indicated to the court that he had concerns relating to its adequacy.

the victim on the basis of either of those characteristics, and (3) the results of the examinations, investigation and questioning.

On the basis of the record, we are unpersuaded that the court failed to consider the appropriate statutory criteria in determining the defendant's eligibility for youthful offender status. The mere fact that the court referred to the seriousness of the crime does not support the defendant's argument that the court failed to consider all of the relevant statutory factors in declining to grant the defendant youthful offender status.

II

Next, the defendant claims that the court improperly granted, over his objection, the state's motion for joinder. Specifically, the defendant argues that (1) the court improperly exercised its discretion in granting the motion because it failed, inter alia, to apply the proper test and (2) due to joinder, he actually was prejudiced as the trial progressed.

A

We first address the defendant's argument that the court did not apply the proper test when considering the motion for joinder. He contends, and the state concedes, that the court mistakenly applied the test for determining whether to consolidate multiple charges against one defendant for trial, instead of the test for determining whether to join the trials of two or more defendants who each allegedly were involved in the same criminal incident.

The record discloses that the court mistakenly considered the factors that our Supreme Court, in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987), had identified as relevant to determining whether multiple charges against one defendant should be consolidated for trial. "[Those] factors include: (1) whether the

charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Delgado*, 243 Conn. 523, 532–33, 707 A.2d 1 (1998), citing *State* v. *Boscarino*, supra, 722–24.

The test that the court should have applied was stated recently by our Supreme Court in *State* v. *Ortiz*, 252 Conn. 533, 747 A.2d 487 (2000): "Ordinarily justice is better subserved where parties are tried together. . . . Joint trials of persons jointly indicted or informed against are the rule, and separate trials the exception resting in the discretion of the court. . . . A separate trial will be ordered where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. . . . [T]he phrase prejudicial to the rights of the [accused] means something more than that a joint trial will probably be less advantageous to the accused than separate trials." (Internal quotation marks omitted.) Id., 575, quoting *State* v. *Booth*, 250 Conn. 611, 620, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000). "The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded."[7] (Internal quotation marks omitted.) *State* v. *Ortiz*, supra, 575, quoting *State* v. *Booth*, supra, 620.

---

[7] We note that the test that the court mistakenly applied in the present case is not substantially similar to the correct test, which is iterated in *State* v. *Ortiz*, supra, 252 Conn. 575.

Ordinarily, a decision on a motion for joinder is entitled to our deference and will not be disturbed absent an abuse of discretion. See, e.g., *State* v. *Ortiz*, supra, 252 Conn. 575 (" '[w]hether to consolidate or sever the trials of defendants involved in the same criminal incident lies within the sound discretion of the trial court' "). When ruling on a motion for joinder, a court's discretion encompasses the act of *weighing the factors* included in the test set forth in *State* v. *Ortiz*, supra, 575, and its predecessors. A court has no discretion, however, in *selecting the test* to apply when considering such a motion. Cf. *State* v. *Thurman*, 10 Conn. App. 302, 317, 523 A.2d 891 ("[t]his court simply does not enjoy the luxury of ignoring binding precedent of our highest court"), cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). Therefore, the abuse of discretion standard of review does not apply because the court applied the wrong factors.

As stated in previous cases, we can affirm a correct decision even though the reasoning underlying that decision is flawed. See, e.g., *State* v. *Lucas*, 63 Conn. App. 263, 270 n.7, 775 A.2d 338 (" '[w]e can sustain a right decision although it may have been placed on a wrong ground' "), cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001); *Biro* v. *Hirsch*, 62 Conn. App. 11, 16 n.7, 771 A.2d 129 ("[w]e may affirm a proper result of the trial court for a different reason"), cert. denied, 256 Conn. 908, 772 A.2d 601 (2001). Accordingly, we review the record to determine whether the ultimate decision on the motion for joinder was correct. Our standard of review is plenary, and we are mindful that our review of the court's initial decision must be based solely on the information provided to the court at the time the motion was considered. See *State* v. *Booth*, supra, 250 Conn. 620–21; see also *State* v. *Smith*, 201 Conn. 659, 669, 519 A.2d 26 (1986) ("[t]he discretion of the court is necessarily exercised before the trial begins and with

reference to the situation as it then appears to the court").

The following additional procedural history is relevant. During the pretrial hearing on the motion, the state argued that (1) the evidence indicated that on the morning following the robbery, a police officer had seen Flowers toss a gun matching the description of one that had been used in the robbery, (2) the police had recovered that gun and testing later had revealed that it was operable, and (3) the state had charged the defendant and Flowers each with violating § 53a-134 (a) (2), which required proof that at least one of the defendants had been armed with a deadly weapon.[8] Thus, the state argued, the operability of the gun that had been recovered on the morning following the robbery was an element of the robbery charge against the defendant. Also, the state claimed that although evidence indicated that Flowers had resisted arrest on the morning following the robbery, that evidence would not be inflammatory, gruesome or otherwise highly prejudicial. The state also contended that the cases were simple and, if joined, likely would take no longer than one week to try. Finally, the state argued, our law favors joinder, and joinder furthers judicial economy.

In response, the defendant argued that because Flowers had additional charges relating to his conduct on the morning following the robbery, there would be evidence admissible against Flowers but not against the defendant.[9] Similarly, the defendant argued that evidence of

[8] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, *he or another participant in the crime* . . . (2) is armed with a deadly weapon . . . ." (Emphasis added.)

[9] Besides robbery in the first degree, Flowers was charged with interfering with an officer in violation of General Statutes § 53a-167a (a) and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).

the fact that Flowers, on the morning after the robbery, had run from a police officer and later resisted arrest would be inadmissible at the defendant's trial if he were tried separately, and that such evidence would be prejudicial in light of the fact that the defendant did not resist his arrest on the evening of the robbery. The defendant also argued that there was a possibility of antagonistic defenses.

In the present case, the defendant failed to offer any persuasive information to substantiate his claim of antagonistic defenses. "[I]t is the party's responsibility to present information to the court from which it can determine whether the defenses are going to be antagonistic . . . ." (Internal quotation marks omitted.) *State* v. *Booth*, supra, 250 Conn. 621. Furthermore, our Supreme Court has stated that mere assertions are insufficient to overcome the preference for a joint trial. See, e.g., id.; *State* v. *Varricchio*, 176 Conn. 445, 449–50, 408 A.2d 239 (1979) (defenses not antagonistic even though defendants asserted they were).

Also, the evidentiary concerns expressed by the defendant do not foster a belief that a joint trial likely would result in substantial injustice. On the basis of the information provided by the defendant at the hearing on the motion for joinder, we conclude that the court's decision to try the defendant and Flowers together was correct.

B

The defendant also claims that due to joinder, he actually was prejudiced as the trial progressed. Specifically, he argues that he was prejudiced (1) by the "spillover" effect of evidence indicating that the gun recovered on the morning following the robbery was operable, (2) because the state "presented its case in a confusing and broken manner," (3) because "joinder eviscerated [his] misidentification defense," (4) because the state

"improperly pitted the defense arguments against one another" and (5) because "the jury instructions exacerbated the prejudice."

"[E]xceptional cases may arise where a motion for [joinder has been properly granted], but during or after the joint trial it appears that the joint trial is resulting or has resulted in substantial injustice to one or more of the accused. In such circumstances, justice to the prejudiced accused requires that he be afforded a new trial." *State* v. *Holup*, 167 Conn. 240, 245, 355 A.2d 119 (1974); accord *State* v. *Booth*, supra, 250 Conn. 623. To prevail on a claim of this type, the "defendant must prove substantial injustice." (Internal quotation marks omitted.) *State* v. *Booth*, supra, 633. "[I]t is not enough for [a] defendant to show that a joint trial was less advantageous than a separate trial would have been." (Internal quotation marks omitted.) Id. Accordingly, we now, inter alia, "scrutinize the strategies [actually] employed by each defendant at trial and determine, in light of the trial court's ongoing duty to monitor the fairness of the joint trial, whether conflict between the defendants tainted the proceeding." *State* v. *Vinal*, 198 Conn. 644, 649, 504 A.2d 1364 (1986); see also *State* v. *Cavanaugh*, 23 Conn. App. 667, 676, 583 A.2d 1311 (1990), cert. denied, 220 Conn. 930, 598 A.2d 1100 (1991).

The record discloses that (1) the defenses employed at trial were not antagonistic, (2) the evidence concerning the operability of the gun was properly admitted against both defendants, (3) the trial was neither lengthy nor complex, (4) the state presented evidence of the crimes in chronological order, (5) the defendant's misidentification defense was not at all compromised and (6) the state did not "improperly [pit]" the defendants against each other. More importantly, the record discloses that the court, while instructing the jury during the trial and in its jury charge, carefully and methodi-

cally directed it to consider each defendant's case separately.

For the foregoing reasons, we conclude that the defendant has failed to prove that he was substantially prejudiced by the joinder of his trial with that of Flowers.

## III

Finally, the defendant claims that the court improperly instructed the jury, thereby violating his right to a fair trial as guaranteed by the fourteenth amendment and article first, § 8, of the Connecticut constitution.[10] The defendant argues that the court (1) improperly failed to include the statutory definition of larceny in its instruction on the elements of robbery in the first degree and (2) improperly commented that the evidence indicated that the defendant had wielded a dangerous weapon in the course of the robbery. In *State* v. *Flowers*, supra, 69 Conn. App. 67–68, Flowers raised the same

---

[10] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf . . . and in all prosecutions . . . to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

In *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), our Supreme Court set forth a six factor test for analyzing independent claims under the Connecticut constitution. "Those six factors are '(1) the textual approach . . . (2) holdings and dicta of [our Supreme Court], and the Appellate Court . . . (3) federal precedent . . . (4) sister state decisions or sibling approach . . . (5) the historical approach, including the historical constitutional setting and the debates of the framers . . . and (6) economic/sociological considerations.' . . . [Id., 685]." *State* v. *Gibbs*, 254 Conn. 578, 599 n.20, 758 A.2d 327 (2000). In his brief to this court, the defendant did not include those factors in his analysis. Absent a proper analysis of the state constitution, we deem abandoned the defendant's state constitutional claim. See *State* v. *Eady*, 249 Conn. 431, 435 n.6, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999).

challenges to the jury instructions, which we addressed and rejected in parts III A and III B of that opinion. We reject the defendant's jury instruction claims on the basis of that analysis.

The judgment is affirmed.

In this opinion, the other judges concurred.