[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON STATE'S MOTION FOR JOINDER AND DEFENDANT'S OBJECT1ON TO THE MOTION AND DEFENDANT'S MOTION FOR SEVERANCE
The state has moved to join the trial of this defendant's matter with the trial of the defendants Anastasios Papadoulos (FST-93829, 139257) and Konstantinos Papadoulos (FST-139259, 936248). This defendant has filed an objection to that motion and has moved for severance.
The state claims that on December 25, 2000, the three defendants took the alleged victim by force to a location in Greenwich where the three defendants sexually assaulted her, compelling her against her will to perform fellatio upon them. The state has charged all three defendants with Kidnapping in the First Degree, Conspiracy to commit Kidnapping in the First Degree, Sexual Assault in the First Degree and Conspiracy to Commit Sexual Assault in the First Degree.
The defendant in his objection cites the standards set forth in the case of State v. Boscarino, 204 Conn. 714, 529 A.2d 1260 (1987). Those standards have been described by the Supreme Court, in State v. Delgado,243 Conn. 523, 532, 707 A.2d 1 (1998), as follows:
The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, we have identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. "These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury CT Page 16308 instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) State v. Cassidy, supra, 236 Conn. 133; seeState v. Chance, supra, 236 Conn. 42-43; State v. Boscarino, 204 Conn. 714,722-24, 529 A.2d 1260 (1987).
These standards apply as relevant, however, when determining whether multiple charges against a single defendant should be consolidated for trial. See, State v. Salmond, 69 Conn. App. 81, 89, 797 A.2d 1113
(2000), cert. denied, 260 Conn. 929, 798 A.2d 973 (2002).
The test to be applied when the state has moved to join the trial of two or more defendants was cited in Salmond, at page 90, as:
The test that the court should have applied was stated recently by our Supreme Court in State v. Ortiz, 252 Conn. 533, 747 A.2d 487 (2000): "Ordinarily justice is better subserved where parties are tried together. . . . Joint trials of persons jointly indicted or informed against are the rule, and separate trials the exception resting in the discretion of the court. . . . A separate trial will be ordered where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. . . . [T]he phrase prejudicial to the rights of the [accused] means something more than that a joint trial will probably be less advantageous to the accused than separate trials." (Internal quotation marks omitted.) Id., 575, quoting State v. Booth,250 Conn. 611, 620, 737 A.2d 404 (1999), cert. denied sub. nom. Brown v.Connecticut, 529 U.S. 1060, 120 S.Ct. 1568, 146 L.Ed.2d 471 (2000). "The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded." (Internal quotation marks omitted.) State v. Ortiz, supra, 575, quoting State v. Booth, supra,250 Conn. 620.
The defendant did address these factors in what he called the "two-pronged severance test." In Chambers conference with counsel for the defendant and counsel for the other two defendants, as well as the prosecuting Senior Assistant State's attorney, no one claimed there would be an alibi defense offered by any defendant; there was no indication that any defendant made a statement or confession that would present a problem under the Bruton Rule-Bruton v. United States, 391 U.S. 123
(1968).
This court understood that the principal defense by each defendant would be that of consent — if any sexual conduct took place it was with the consent of the alleged victim. There appeared to be no CT Page 16309 indication of any antagonistic defense between this defendant and the other two defendants.
The principal issue raised by the defendant in his objection was that the state would introduce evidence that semen stains on the alleged victim's sweater, which she was wearing on the evening of the alleged assault, was tested for DNA and the tests established that the DNA of the co-defendants, the Papadoulos brother was present in the semen stains. There was no DNA evidence found implicating this defendant.
The defendant claims that the introduction of this evidence against his codefendants would not be admissible against him and this clearly indicates that a joint trial will probably be prejudicial to his right to a fair trial.
He asserts that no physical evidence of any sexual activity of any kind exists against him. The defendant claims that the "quantity and character" (quoting State v. McCarthy, 188 Conn. 432, 449-50, 450 A.2d 828
(1982)) of DNA evidence admitted against the co-defendants, but inadmissible against him would be undeniably prejudicial in a joint trial.
The McCarthy case is substantially different from the present charges.McCarthy involved a case in which one defendant was indicted on a charge of robbery with violence, the other co-defendants were charged not only with that same offense, but also with other robberies, larcenies, and kidnapping. Yet, McCarthy's single indictment was tried with the multiple charges against the co-defendants.
"The state relied principally on the testimony of Lubas. His story of the commission of these different crimes was lurid. Only a small portion of that testimony connected the defendant with the crime charged against him. He sat through the trial with the co-defendants, listening, with the jury, to the tale of their misdeeds and subject to such prejudice as this atmosphere would naturally create The quantity and character of the evidence admitted against Nemeth and Howley but inadmissible against the defendant was such that no amount of care in the charge could have removed the resulting prejudice." State v. Mccarthy, at 104.
In this case the state indicates that each of three defendants forced her to perform fellatio upon him and that the co-defendants Papadoulos brothers ejaculated, but that this defendant did not ejaculate. UnlikeMcCarthy, the charges against this defendant are exactly the same as the charges against the co-defendants. Finally, the state claims that each of the defendants being charged with Conspiracy to Commit Sexual Assault in CT Page 16310 the First Degree, the DNA evidence would be admissible against this defendant under that count.
That claim of the state aside, this court believes that the evidence of the codefendants DNA found on the alleged victim's sweater, if admissible against them, would not in itself warrant severance.
This court believes that the appropriate standards to apply on this issuance of joinder were clearly stated by the Supreme Court in the case of State v. Turner, 252 Conn. 714, 751 A.2d 372 (2000). In that case the defendant was convicted of the crimes of Murder and Assault in the First degree.
"Corey Turner next claims that the trial court improperly denied his motion for severance. Specifically, he argues that the joinder of his trial with that of Charles Turner was prejudicial because it allowed the jury to consider, in reaching its verdict against him, evidence admitted against Charles Turner that would not have been admissible against him alone.
"The following additional procedural history is relevant to this claim. On November 18, 1996, the state moved to consolidate the trials of Corey Turner and Charles Turner. Corey Turner then moved to sever his case from that of Charles Turner. He argued that having a joint trial with Charles Turner, who was positively identified as having been at the scene of the crime, would substantially prejudice him because it was likely that the jury would convict him because of a tendency to link the brothers together. Corey Turner also argued that he would be prejudiced if the jury learned that Charles Turner's street name was "Homicide". The trial court granted the state's motion to consolidate on November 27, 1996. The trial court reasoned that Corey Turner and Charles Turner should be tried together because the same evidence would be presented in both cases and the parties had not demonstrated substantial prejudice from consolidating the trials. Prior to trial, Corey Turner renewed his motion to sever, and the trial court again denied the motion. Prior to sentencing, Corey Turner again renewed his motion to sever, and the trial court denied it for the third time.
"The rules that govern motions for severance are well established. `[W]hether to consolidate or sever the trials of defendants involved in the same criminal incident lies within the sound discretion of the trial court. . . . Ordinarily justice is better subserved where parties are tried together. . . . Joint trials of persons jointly indicted or informed against are the rule, and separate trials the exception resting in the discretion of the court. . . . A separate trial will be ordered CT Page 16311 where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. . . . [T]he phrase prejudicial to the rights of the [accused] means something more than that a joint trial will probably be less advantageous to the accused than separate trials.' . . . State v. White, 229 Conn. 125, 158-59, 640 A.2d 572 (1994); accordState v. Walton, 227 Conn. 32, 56, 630 A.2d 990 (1993); State v. Smith,201 Conn. 659, 668-69, 519 A.2d 26 (1986); see also State v. Vinal,198 Conn. 644, 648, 504 A.2d 1364 (1986).
"`The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded. State v. White, supra, 229 Conn. 158. [W]e will reverse a trial court's ruling on joinder only where the trial court commits an abuse of discretion that results in manifest prejudice to one or more of the defendants. State v. Vinal, supra, 198 Conn. 649. The discretion of the court is necessarily exercised before the trial begins and with reference to the situation as it then appears to the court. State v. Smith, supra, 201 Conn. 669; accord State v. McCarthy, 130 Conn. 101, 103, 31 A.2d 921 (1943). Therefore, we must review the trial court's decisions to grant the state's motion for joinder and to deny the defendants' motions for severance based upon the evidence before the court at the time of the motions.' (Internal quotation marks omitted.) State v. Booth,250 Conn. 611, 620-21, 737 A.2d 404 (1999).
"Applying this standard to the facts of this case, we conclude that the trial court did not abuse its discretion in denying Corey Turner's motions for severance. The trial court properly determined that Corey Turner would not suffer undue prejudice from the introduction of evidence in the case against Charles Turner that would not have been admissible solely against Corey Turner. Although evidence that is probative of one defendant's guilt but technically admissible only against a co-defendant might present a risk of prejudice from a joint trial, such risk must be compelling in order to warrant severance of the trials.
"`A joint trial expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called to testify only once. . . . [W]here proof of the charges against the defendants is dependent upon the same evidence and alleged acts . . . severance should not be granted except for the most cogent reasons.' (Citation omitted; internal quotation marks omitted.) Id., 622. The evidence that Charles Turner was at the scene of the CT Page 16312 crime, that his nickname was "Homicide", and that he might have tried to influence witnesses prior to trial are not cogent reasons for severing his trial from that of Corey Turner.
"Moreover, any possible risk of prejudice was mitigated by the trial court's instructions to the jury in this regard. The trial court instructed the jury to `keep in mind that we have been trying two separate cases. . . . [Y]our findings in one case do not in themselves establish a basis for similar findings in the other case. For all practical purposes, the defendants are to be considered to be on trial separately; that is to say, one may be found guilty and the other not guilty, or both may be found guilty, or both may be found not guilty according to your findings upon the evidence and the law as stated by the court. . . . Each defendant is to be considered as if he were on trial alone for the offense for which he stands charged.' We presume, in the absence of some indication to the contrary, that the jury followed those instructions and considered the case of each defendant separately. See, e.g., Mulligan v. Rioux, 229 Conn. 716, 737, 643 A.2d 1226 (1994). In light of the evidence and the jury instructions, we conclude that the trial court acted within its discretion in consolidating, and then refusing to sever, the defendants' trials."
State v. Turner, 252 Conn. 714, 738-741, 751 A.2d 372 (2000)
Using these criteria, this court sees no reason to refuse the joinder requested by the state and therefore overrules the defendant's objections.
___________________ NIGRO, J.T.R. CT Page 16313